**Lawrence Furman SMITH, Appellant,**

**v.**

**James D. COX, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 14487.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1970.

Decided Dec. 8, 1970.

455

Parker E. Cherry, Richmond, Va. (Court-assigned counsel) [Purcell, Cherry & Kerns, Richmond, Va., on the brief], for appellant.

Vann H. Lefcoe, Asst. Atty. Gen. of Virginia (Andrew P. Miller, Atty. Gen. of Virginia, on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This is an appeal from the denial of a writ of habeas corpus by a state prisoner incarcerated for an aggregate term of twenty-eight years for conviction of robbery and larceny upon his pleas of guilty. After available state remedies had been denied, the writ was sought from the district judge, who found no merit in the contentions that the petitioner had been placed in double jeopardy by reason of conviction of both offenses, that petitioner's pleas of guilty were accepted without proper warning to him of their effect or proper inquiry as to whether he understood his constitutional rights, that he had been denied effective assistance of counsel, and that he was improperly denied the opportunity to prove that the state trial judge who sentenced him was senile and incapable of making an informed, fair judicial determination of the punishment that he should suffer. We agree with the district judge that petitioner's contentions with respect to double jeopardy, his plea and the quality of his representation are without merit, but we think that petitioner has been denied the opportunity to inquire into the

fitness of the state trial judge to sentence him. We, therefore, vacate the judgment and remand the case to the district judge for further proceedings.

–I–

Petitioner's convictions arose out of these facts: On the evening of August 2, 1964, petitioner and an accomplice entered the J. R. Mills General Merchandise store, in Hanover County, Virginia, which was then in charge of an employee named Sam Edward Melton. The store was closed, but they gained entrance by saying that they wanted to purchase cigarettes. When Melton let them in, petitioner and his companion struck Melton and took $51.00 of his own money from his person. They also ransacked the store and took a safe containing several hundred dollars belonging to the owner, Mills.

Petitioner was apprehended and two indictments were returned against him. One charged burglary with the taking of money and chattels belonging to J. R. Mills. The other charged robbery of Melton with theft of $51.00 of his money taken from his person. When the proof showed that Melton gave access to the store the burglary indictment was amended to allege larceny.

Petitioner was represented by counsel, and he pleaded guilty to each indictment. He was sentenced to eighteen years for robbery and ten years for larceny. His accomplice was subsequently sentenced by the same judge to a total of twelve years for the same offense. Petitioner, in proper person, filed a notice of appeal, but counsel who had represented him at the trial had withdrawn. The court then appointed new counsel to represent petitioner on his appeal, but this attorney did nothing to perfect the appeal and permitted the time to perfect it to lapse. Later, another attorney was appointed to represent petitioner, and was permitted to file a belated appeal. The Supreme Court of Appeals of Virginia denied the appeal. Petitioner then sought and was denied state habeas corpus relief.

–II–

First, we turn to petitioner's claim to have suffered double jeopardy. He argues that the offense of larceny of which he was convicted was a part of and included in the offense of robbery for which he was also convicted, so that separate consecutive sentences for both crimes violated his right not to be placed in jeopardy twice. We disagree.

The double jeopardy clause does not prevent conviction and sentence at one trial for multiple offenses arising out of one transaction of criminal conduct, where each offense rests on different necessary elements. The clause can be violated by a single trial conviction only if all the elements necessary for conviction under one statutory provision are also necessary elements under the other. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); McGann v. United States, 261 F.2d 956 (4 Cir. 1958), cert. den., 359 U.S. 974, 79 S.Ct. 891, 3 L.Ed.2d 841 (1959). See also Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). Even in that case, the accused does not suffer double jeopardy unless he is convicted and sentenced under both statutes for the same acts; two separate criminal acts could constitutionally be punished twice under the same or identical statutes. Blockburger v. United States, *supra.*

In this case, separate elements were necessary for conviction under each of the two statutes applied. Robbery, under Virginia law, is a common law crime. While Code of Va. § 18.1–91 fixes the punishment for robbery, it does not define it. Mason v. Commonwealth, 200 Va. 253, 105 S.E.2d 149 (1958). The common law, in effect in Virginia, defines robbery as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Pierce v. Commonwealth, 205 Va. 528, 138 S.E.2d 28, 31 (1964). See also, Mason v. Commonwealth, 200 Va. 253, 105 S.E.2d 149 (1958); Smyth v. White,

195 Va. 169, 77 S.E.2d 454 (1953). Larceny, in Virginia, is also a common law crime, although it is regulated by statute. It is the taking of goods or chattels of another. *Cf.* Satterfield v. Commonwealth, 105 Va. 867, 52 S.E. 979 (1906). The taking of $5.00 or more from the person of another, or $50.00 or more not from the person of another, is grand larceny. Code of Va. § 18.1–100. All other larceny is simple larceny. Code of Va. § 18.1–101. The indictment and sentence in the case at bar indicate that petitioner was convicted of grand larceny.

It is readily apparent that the elements of the crime of robbery and grand larceny are different. Robbery involves violence or intimidation, while larceny does not. Larceny requires proof of amount, at least for purposes of maximum punishment, while robbery does not. The fact that the amount which must be proved is small and is in practice relevant only to the maximum sentence which can be imposed does not prevent its being a separate element of the crime. Gore v. United States, *supra*, indicates that separate elements suffice to save convictions at a single trial from invalidity even where the differences between the crimes charged are minor, and do not involve significant differences in the state interests involved. Here, the differences are more substantial.

Even if larceny were a lesser included offense in robbery, petitioner's convictions here would be sustainable on the grounds that two separate criminal acts were committed: the larceny of Mills' money and property and the robbery of Melton. Since each of these was a separate act on petitioner's part, and each independently offended a criminal provision, petitioner could have been convicted and sentenced for both of them at one trial even under a single statute. This is true despite the fact that the acts were committed proximately in time. See Blockburger v. United States, *supra*.

And even if petitioner's acts could have been treated as constituting the commission of a single crime on the theory that Melton was custodian of Mills' safe, its contents and other merchandise, petitioner may not now claim that he was placed in jeopardy twice. Having pleaded guilty to the indictments, petitioner may not now go beyond the facts alleged therein and admitted by him and complain about how he may have been charged, or the theories under which he may have been convicted had he elected to stand trial on pleas of not guilty. We hold, therefore, that petitioner was not placed in double jeopardy, because he was charged and admitted to guilt of two separate offenses.

–III–

The taking of petitioner's pleas of guilty unquestionably did not comply with the formal requirements of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which requires the making of a formal record to demonstrate that the accused intelligently and knowingly pleaded guilty. Ordinarily it would seem that the record should be made by interrogation of the accused by the trial judge, by counsel, or by both. *Boykin,* however, has been held not to be retroactive, United States ex rel. Hughes v. Rundle, 419 F.2d 116 (3 Cir. 1969), and we agree. *Boykin's* holding is analogous to Rule 11, F.R.Crim.Pro., as interpreted in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). *McCarthy* was held not to be retroactive in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), on the grounds that convictions based on pleas not voluntary or knowing could be reversed without reliance on the rule of *McCarthy,* and that retroactivity would be highly disruptive of the administration of justice, since large numbers of guilty pleas had been obtained without compliance with the *McCarthy* requirements. These considerations are equally applicable here. The purpose of *Boykin* was merely to forestall "the spin-off of collateral proceedings that seek to probe murky memo-

ries," 395 U.S. at 244, 89 S.Ct. at 1713. Even before *Boykin,* it was constitutionally required that guilty pleas be entered with a knowledge of their consequences, see Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 120, 76 S.Ct. 223, 100 L.Ed. 126 (1956), and in this circuit the burden of proof of knowledge and understanding was on the state. Bailey v. MacDougall, 392 F.2d 155, 159 (4 Cir.), cert. den., 393 U.S. 847, 89 S.Ct. 133, 21 L.Ed.2d 118 (1968). This requirement assures that a fair review of the guilty plea can be given without the disruption which would be produced by applying *Boykin* retroactively.

■ Under pre-*Boykin* standards, including those of *Bailey,* the acceptance of the guilty plea in this case was not erroneous. As we read this record, the district judge's finding that "petitioner fully comprehended the nature of the charges against him, and knew the effect of his guilty plea" is fully supported. Petitioner was represented by counsel from after return of the indictments through the plea and sentence. The indictments were read to him in open court; and, in accordance with Virginia practice, Code of Va. § 19.1–192, the witnesses and evidence against him were presented in his presence and in the presence of his counsel.

More importantly, petitioner's trial counsel testified at the habeas hearing that he investigated the case and conferred with his client on a number of occasions, that petitioner freely admitted his guilt and that petitioner was fully advised of his rights and the consequences of his pleas. Petitioner disputed none of this, except that he claimed that his plea was induced by his counsel's representation that an arrangement had been made so that petitioner would receive a sentence of eight years. Counsel, however, emphatically denied any such arrangement or any such advice to his client. A simple issue of credibility was raised, and we cannot say that it was incorrectly resolved by the state habeas judge or that the district judge

should have overturned the state habeas judge's resolution.

–IV–

■ We see no merit in petitioner's contention that he is entitled to further relief because of ineffective assistance of counsel on appeal. His argument is two-fold. First, he argues that his first counsel, appointed to represent him on appeal, did nothing and permitted the appeal to lapse. Undoubtedly, this was ineffective representation, but this denial of petitioner's rights was subsequently redressed. New counsel was appointed, and application for a writ of error was prepared and filed. Although it was denied on the merits, it was considered out of time, and petitioner is entitled to no more. See Shiflett v. Commonwealth of Virginia, 433 F.2d 124 (4 Cir. 1970); Nelson v. Peyton, 415 F.2d 1154 (4 Cir. 1969), cert. den., Cox v. Nelson, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970); cf. Cabaniss v. Cunningham, 206 Va. 330, 143 S.E.2d 911 (1965). We note, furthermore, that even had the defect not been repaired, the prejudice to an accused from his counsel's failure to appeal is far slighter than usual where, as here, he was convicted on a plea of guilty. In such a case, the scope of review on appeal is severely restricted. Roth v. Peyton, Mem. Dec. No. 13,697 (4 Cir., May 12, 1970); Peyton v. King, 210 Va. 194, 169 S.E.2d 569 (1969).

■ Petitioner's second argument is that the second attorney who was appointed to represent him on appeal proceeded on the basis of the transcript of trial but did not confer with petitioner. In the light of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), we conclude that counsel, appointed to represent an indigent appellant, ordinarily should consult with his client at least once to ascertain his client's desires with regard to the alleged trial errors which the appellant wishes to press, because counsel has a duty to press arguments initiated by his client

which may arguably be supported, even though counsel does not personally espouse them. Ordinarily this consultation is more effective and efficient if it occurs in a personal interview, but circumstances may make this impossible so that resort to correspondence must be had.

But however desirable the procedure we suggest may be, we cannot say that it is one required by the Constitution. Moreover, petitioner does not suggest any arguments which should have been raised on appeal that cannot be dealt with on their merits in these proceedings. Their absence and the fact of the limited scope of review on appeal after pleas of guilty, lead us to conclude that a failure of the attorney to consult with petitioner does not amount to a denial of the constitutional right to the effective assistance of counsel.

–V–

Petitioner's contention with respect to the trial judge's competency to sentence him is grounded on the assertion, not disputed in argument, that the judge resigned his office within nine months after petitioner's case was terminated. The resignation, it is said, followed a complaint to the Governor about the trial judge's mental condition by a member of the grand jury which indicted petitioner and the filing of medical reports with the Virginia Supreme Court of Appeals. Under Code of Va. § 51–22, *et seq.* the Supreme Court of Appeals was at that time vested with authority to remove a judge on the ground that he had become mentally incompetent. The fact that petitioner received a sentence grossly disproportionate to the sentence imposed upon his codefendant who was of greater or equal guilt is stressed, and it is claimed that petitioner had no convictions more recent than sixteen or seventeen years prior to the crimes in question. Overall, it is argued that the inference that the trial judge had become mentally incompetent prior to petitioner's sentencing should be drawn, and petitioner should be afforded the oppor-

tunity to attempt to prove his contention.

Petitioner sought to raise this point in his initial state application for a writ of habeas corpus, alleging that he was entitled to relief because the court was not "properly constituted." This petition was denied by the trial court, but the denial was reversed by the Virginia Supreme Court of Appeals, which directed that petitioner be afforded a plenary hearing on the various issues he raised. Petitioner then filed an amended petition for habeas corpus. The amended petition adopted by reference the allegations of the original, but did not explicitly repeat the claim that the trial court had not been duly constituted. Petitioner's counsel also sought an order for the issuance of a subpoena duces tecum to require the production of the trial judge's medical records. The request was denied on the grounds that the competency of the judge was not raised in the petitions. Counsel declined to amend his pleading further, although at the hearing he lodged an objection on the record to the court's denial of an order directing the subpoena duces tecum to issue. When the amended petition for a writ of habeas corpus was denied after plenary hearing, petitioner appealed on the grounds, *inter alia,* that it was error to refuse to order the subpoena to issue and that the court below should have granted relief because the trial judge was in poor mental and physical health. The Supreme Court of Appeals refused to grant a writ of error, without commenting upon these grounds.

The application for a writ of habeas corpus to the district court specifically alleged a denial of due process because of the "senile and mental condition of the Presiding Judge at my trial. * * *" The district judge, who did not grant a further hearing, apparently considered the allegation to be limited to physical disability. He dismissed the contention as "frivolous" commenting that it is "completely unsubstantiated factually and uncorroborated by anyone."

■ We have no doubt that the due process clause of the fourteenth amendment guarantees that the determination of sentence be made by a judicial officer mentally competent to carry out his duties. To permit a mentally impaired man to weigh the myriad considerations and to make the difficult choices involved in fixing a punishment—choices which often depend on insights into defendant's character and future behavior as well as conclusions as to the seriousness of the offense—would surely violate the standards of fair play established by the due process clause. Mental incompetence is at least as serious a defect as prejudice or interest on the part of a judge, both of which have already been held constitutionally impermissible. See In the Matter of Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). If in fact it can be shown that petitioner was sentenced by a judicial officer who, as a result of mental disease or physical disease adversely affecting his mental processes, was unable to comprehend, consider, or weigh the factors entering into the determination of an appropriate sentence, petitioner would be entitled to have his sentence vacated and to be resentenced by a judicial officer who was mentally competent. Failing this he should be discharged from custody.

■ Petitioner's claim to have been tried by a senile judge cannot be considered frivolous simply because no evidence has yet been brought on the issue. Petitioner has alleged the existence of specific facts to support his claim. He could hardly be expected to have presented them at the original trial. Some of them were not in existence at that time. Although petitioner could perhaps have succeeded in adducing his evidence at a state habeas hearing had his petitions been more complete, his errors in following state procedure do not amount to that "inexcusable neglect" which forecloses the introduction at a federal habeas hearing of evidence not previously considered. See Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Under these circumstances, *Townsend* requires an evidentiary hearing.

■ We conclude that the statements at the bar, coupled with the allegations made in various pleadings, warrant further exploration of whether petitioner's contention is well-founded. This sensitive issue of state administration of state criminal justice should be litigated in the first instance in the state courts. Although it appears that the state courts have not considered the issue on its merits because of petitioner's noncompliance with state procedural requirements, we have no reason to doubt that, if the contention is squarely raised, the state courts will be willing to afford the petitioner a reasonable opportunity to prove his case, including the right to subpoena evidence, and to grant him relief if evidence to sustain it is adduced. To enable petitioner to litigate the question of the competency of the state trial judge to sentence him and, hence, to litigate the validity of his sentence, we vacate the judgment of the district court and remand the case to it for further proceedings. Upon remand, the district judge should stay the proceedings a reasonable period to enable petitioner to attempt to litigate these questions in the Virginia courts. In the event that the Virginia courts decline to consider the issue on its merits within a reasonable period, or, having considered the issue on its merits, conclude that the petitioner is not entitled to relief, the district judge shall conduct such further proceedings as may be appropriate to determine whether petitioner has been denied due process of law.

Vacated and remanded.