Robert J. MONSOUR, 8052A, Petitioner,

v.

Elmer O. CADY, Respondent.

Civ. A. No. 70-C-190.

United States District Court,
E. D. Wisconsin.

May 31, 1972.

Theodore F. Zimmer, Milwaukee, Wis., for petitioner.

William A. Platz and Thomas J. Balistreri, Asst. Attys. Gen., Madison, Wis., for respondent.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

This is an application for writ of habeas corpus pursuant to Title 28 U.S.C. § 2241. A response was ordered from the respondent Elmer O. Cady. Counsel was appointed by the court to assist the petitioner in prosecuting his petition and a hearing on the petition was held, at which time I indicated that I would have to find against the petitioner. Herewith are my findings of fact, conclusions of law, and order.

On May 12, 1969, petitioner appeared in the County Court of Waukesha County, Wisconsin, and entered pleas of guilty to twelve charges pending against

him. The charges had arisen in four different Wisconsin counties,* and pursuant to petitioner's request, his attorney had asked the Waukesha district attorney to effect consolidation in accordance with Wis.Stats. § 956.01(13). The court accepted petitioner's pleas and on June 10, 1969, sentenced Monsour to a term of imprisonment not to exceed one year on each of the eleven offenses, and for the charge of aggravated battery from Shawano County, he received a five-year sentence. The court ordered that the eleven one-year sentences were to be served concurrently but with all of them to be served consecutively to the five-year sentence.

## FACTS

On March 6, 1967, the petitioner, along with a Charles McCabe, were in downtown Shawano, Wisconsin. At approximately 10:00 P.M. the petitioner was placed under arrest by a Shawano police officer. The facts surrounding the arrest are unclear. Petitioner had attempted and did obtain narcotic drugs (morphine) from a Shawano pharmacy. At the time of his arrest, his companion's physical condition was such that the police removed him to the hospital. Petitioner was under the influence of morphine when he was brought to the Shawano County jail.

What occurred at the jail is under dispute. I find that the events unfolded in the following manner. Soon after arriving in the jail, petitioner began to experience severe discomfort out of his need for morphine, and under stress he reacted in a hysterical manner, destroying some of the fixtures in his cell. The police called a local doctor who refused to

inject the morphine but did give a vial of morphine to the petitioner who self-injected it. Either while the petitioner was injecting himself or shortly thereafter, one of the police officers read petitioner the waiver of rights from an old alcohol influence form. Petitioner signed the waiver and gave a statement which one of the officers wrote up. The officer who wrote the statement testified that it did not contain petitioner's exact words but rather was his interpolation of them. For example, the officer who took the statement used the word "severely" as petitioner's description of the beating to McCabe; yet at the hearing held on July 1, 1971, the officer could not remember if the petitioner used this term to describe the beating. Both officers testified that right after injecting himself with the morphine, the petitioner went from a state of emotional frenzy to a state of calm alertness.

At the time of his Shawano arrest, petitioner was under conditional release status from the Winnebago State Hospital, Winnebago, Wisconsin. Shawano authorities returned him to the institution. For approximately the next two years, the Shawano charges remained pending while petitioner received treatment, both in and out of the Winnebago facility and finally at Central State Hospital, Waupun, Wisconsin. It was during this period of time that petitioner committed other crimes with which he was charged and which were ultimately consolidated in the Waukesha County proceedings of May 12, 1969.

During the period of time between his Shawano arrests and Attorney Patrick Snyder's appointment by the Waukesha County Court to represent petitioner, pe-

---

* Those charges included four charges pending in Waukesha County (one charge of unlawfully obtaining a dangerous drug by unlawfully uttering a false prescription in violation of Wis.Stats. § 151.07(9) (a), and three worthless check charges involving alleged violations of Wis.Stats. § 943.24(1)); three charges pending in Milwaukee County (two worthless check charges and one charge of fraud on a motel keeper in alleged violation of Wis. Stats. § 943.21); two charges pending in Shawano County (one charge of obtaining a narcotic drug by fraud in alleged violation of Wis.Stats. § 161.17 (1) and one charge of aggravated battery in alleged violation of Wis.Stats. § 940.-22); and three charges pending in Outagamie County (all of these charges involved obtaining a dangerous drug by willful misrepresentation in alleged violation of Wis.Stats. § 151.07(9) (a)).

titioner had been represented by two privately secured attorneys. With petitioner's knowledge the second of the two attorneys had entered into plea bargaining discussions with the Shawano authorities. Before Mr. Snyder represented him, petitioner had already signed an application for consolidation of the Shawano County and Waukesha County charges.

On April 10, 1969, when the Waukesha County Court was informed that the second of the two attorneys had withdrawn from the petitioner's case, Judge William G. Callow found the petitioner indigent and appointed Attorney Patrick Snyder of Oconomowoc to represent him. Mr. Snyder met with the petitioner four times for varying periods of time and appeared with petitioner at four court hearings. During the time between Mr. Snyder's appointment and his client's plea of guilty, petitioner had contacted the Shawano County district attorney regarding his consolidation efforts. The district attorney replied that if the petitioner would plead guilty to the aggravated battery charge and one of the three narcotics charges, he would dismiss the other two narcotics charges; otherwise he would prosecute on all four charges.

At his first meeting with Mr. Snyder, petitioner mentioned that he desired to consolidate the charges as he had started to do with his previous attorney. He indicated to Mr. Snyder his hope that he could be committed to the Federal Clinical Research Center at Lexington, Kentucky, for narcotic addicts in lieu of commitment to a state correctional institution. Between their first meeting on April 10 and through the sentencing on June 10, most of Mr. Snyder's energies, as petitioner's attorney, were directed toward finding out from the federal authorities the commitment procedure to Lexington and conferring with the state trial court to find a means for placing the petitioner on probation and subsequent referral to Lexington. As a result of Mr. Snyder's efforts on his behalf, petitioner's hopes of getting into

Lexington were aroused, but neither Snyder nor the trial judge guaranteed or promised that upon pleading guilty to the consolidated charges petitioner would go to Lexington.

Although Mr. Snyder cautioned the petitioner against a hasty decision to consolidate, he only briefly investigated the factual basis of the non-Waukesha charges against the petitioner, particularly those which arose in Shawano County. Mr. Snyder did not discuss the difference in penalties between aggravated battery (Wis.Stats. § 940.22 (1967)) and battery (Wis.Stats. § 940.-20 (1967)) or the fact that the only element differentiating the two crimes is the extent of harm to the victim. Neither did Mr. Snyder investigate the circumstances surrounding the petitioner's several arrests. Consequently, he did not discuss with the petitioner any possible defenses that he might have arising from police conduct and procedure at the time of petitioner's confession.

At the hearing itself on May 12, 1969, when petitioner pleaded guilty to the consolidated indictment of twelve charges, the trial court did not question petitioner as to any of the following matters: (1) petitioner's education and general comprehension, (2) petitioner's understanding of the nature of the crimes with which he was charged (except to ask "And you understand each of the charges?"), (3) petitioner's understanding of the range of punishment carried by the crimes charged, and (4) the conduct to which petitioner admitted by pleading guilty.

On September 26, 1967, Mr. James McDermott, the state public defender, was appointed by the Wisconsin Supreme Court to represent petitioner in his post-conviction proceedings. Between the day of his appointment and January 26, 1970, when he entered his "no merit report," Mr. McDermott corresponded extensively with the petitioner and studied the trial court record of the proceedings below. McDermott relied on the petitioner's statement of the

facts in the various letters, and he limited his questions solely to information the petitioner provided. Petitioner described his version of the events that occurred on March 6, 1967, in a letter to Mr. McDermott dated December 11, 1969. In his testimony in this court, McDermott stated that in light of the petitioner's several convictions and petitioner's "waiver of constitutional rights taking place in the pre-plea setting" by his plea of guilty, he could not find merit in the petitioner's claims. Only after McDermott had prepared his no merit report did petitioner inform him that he believed his trial counsel was insufficient and that his mail from the prison was being censored. The petitioner could not remember what information he felt unable to communicate to McDermott due to his alleged fear of prison censorship.

On February 11, 1970, petitioner filed a pro se response to McDermott's no merit report. On March 4, 1970, the Wisconsin Supreme Court filed an unpublished opinion which concluded that petitioner's case was "wholly frivolous and without arguable merit" and dismissed McDermott from the case (unpublished opinion #70/53). Petitioner then filed a pro se motion with the Wisconsin Supreme Court asking to have another attorney appointed on his behalf. This motion was denied in an unpublished opinion on March 12, 1970.

## ISSUES

In his application for writ of habeas corpus, petitioner raises the following three issues:

1. Whether petitioner's guilty plea to each charge was a knowing, intelligent, and voluntary act done with sufficient awareness of the circumstances as to constitute a valid waiver of his constitutional rights;

2. Whether petitioner's constitutional right to effective assistance of counsel at the trial court level was satisfied by Attorney Snyder's efforts in representing petitioner in this case; and

3. Whether petitioner's constitutional right to effective assistance of counsel for his post-conviction remedies was satisfied by Attorney McDermott's efforts in representing petitioner in this case.

On each of these issues, I found at the time of the hearing in this court that petitioner's application for habeas corpus should be dismissed.

1. *Whether petitioner's guilty plea to each charge was a knowing, intelligent, and voluntary act done with sufficient awareness of the circumstances as to constitute a valid waiver of his constitutional rights.*

▇▇ If petitioner's plea of guilty to the consolidated complaint had occurred after June 22, 1969, this court would have been bound by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), to grant his petition. *Boykin* requires trial court judges to make a thorough inquiry at the time a defendant pleads guilty to determine whether the defendant has made an intelligent and voluntary plea. The facts in this case indicate that the trial court judge did not meet the *Boykin* requirements. However, *Boykin* was decided on June 2, 1969, and the petitioner pleaded guilty on May 21, 1969. Petitioner concedes in light of the number of cases rejecting a retroactive application of *Boykin*—Dominguez v. Henderson, 447 F.2d 207 (5th Cir. 1971); United States ex rel. Rogers v. Adams, 435 F.2d 1372 (2d Cir. 1970); and Smith v. Cox, 435 F.2d 453 (4th Cir. 1970)—that he cannot expect this court to apply the *Boykin* standards to the facts in this case.

However, petitioner argues that the accumulated set of factors impinging on the petitioner in this case resulted in an unknowing, involuntary guilty plea. These factors were: (1) the circumstances surrounding petitioner's confession to the Shawano County authorities, (2) the impact on petitioner of the Shawano County's letter regarding consolidation, and (3) petitioner's over optimism about getting treatment at Lex-

ington upon pleading guilty to the consolidated charges.

As indicated in my summary of the facts, petitioner's over optimism about getting into Lexington was self-induced. Neither the trial judge nor his appointed attorney made any promises that Lexington was the quid pro quo for a guilty plea.

■■ Admittedly, when a defendant in a criminal prosecution engages in plea bargaining, he faces a set of unpleasant alternatives, particularly when the prosecutor does not go so far as to recommend probation. But unpleasantness is not in and of itself coercive. In this case the Shawano County district attorney's letter simply informed the petitioner of what his alternatives were. He could face trial on four charges or plead guilty to two of them with a reasonable prospect of serving time. The letter informed petitioner of the potential sentence to each charge and thus enhanced petitioner's knowledge of the potential impact of pleading guilty. In light of the many cases that have upheld the plea bargaining process as long as it is protected with constitutional safeguards—Brown v. Beto, 377 F.2d 950 (5th Cir. 1967); United States ex rel. Rosa v. Follette, 395 F.2d 721 (2d Cir. 1968); Ford v. United States, 418 F.2d 855 (8th Cir. 1969); and Parrish v. Beto, 414 F.2d 770 (5th Cir. 1969)—I find that petitioner knowingly accepted the bargain as the lesser of two bleak alternatives.

■ The effect of the Shawano confession on the petitioner at the time of his guilty plea raises a more complex problem. The confession was certainly incriminating. The circumstances surrounding the Shawano police officers' procurement of petitioner's confession raise some questions as to its voluntariness. Yet petitioner, two years and three attorneys later, pleaded guilty to the consolidated charges. The general rule is that a plea of guilty, if voluntarily and understandingly made, is conclusive as to a defendant's guilt and admits all of the facts charged and waives all nonjurisdictional defects in the proceeding. McMann v. Richardson, 397 U.S. 759, 766, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Ford v. United States, 418 F.2d 855, 860 (8th Cir. 1969); Busby v. Holman, 356 F.2d 75, 77 (5th Cir. 1966). In McMann, supra, and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), the Supreme Court dealt with the effect of a guilty plea on a party's raising procedural constitutional issues either on appeal or through a habeas corpus petition. In both cases the prisoners' claims for relief were denied. In both, the prisoners alleged that their trial attorneys had not properly advised them as to the consequences of pleading guilty. Richardson alleged that his confession had been beaten out of him and that his court-appointed counsel met with him for only ten minutes. On these facts the court in a divided opinion held:

"That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. * * * That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty." 397 U.S. 759, 770, 90 S.Ct. 1441, 1448.

In Parker, supra, the court noted that in the month between his confession and his guilty plea, the petitioner had "the advice of retained counsel and of his family * * *. The connection, if any, between Parker's confession and his plea of guilty had 'become so attenuated as to dissipate the taint.' * * *" 397 U.S. 790, 796, 90 S.Ct. 1458, 1462. Thus, unless the petitioner can show gross incompetence on the part of his trial attorney, his guilty plea effectively waives his right to post-conviction relief.

Petitioner relies on three cases to show that his guilty plea was not a knowing and voluntary waiver of his constitutional rights. They are distinguishable on their facts. In United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3rd Cir. 1968), the defense attorney pleaded his client guilty to first degree murder knowing of facts which suggested that his client had a valid claim of self defense. He misinformed his client as to the impact of a guilty plea on a defendant's right to raise any defenses to an indictment. In three separate arraignments the defendant had switched his pleas to the charge of murder indicating substantial confusion as to his guilt. In the present case the petitioner never waivered from his desire to consolidate the charges even after being informed by his trial counsel that if he consolidated the charges he would have to plead guilty.

In United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y. 1967), the petitioner was indicted for selling narcotics (six marijuana cigarettes) and was told by his defense counsel that he faced a potential prison sentence of between seven and a half and fifteen years. The petitioner testified that at his trial he overheard the prosecutor tell his attorney that if petitioner did not cooperate, he would be prosecuted to the fullest extent of the law, but that if petitioner cooperated, he would go easy on him. Thurmond further claimed his attorney told him that the district attorney would recommend a suspended sentence. On this basis he switched his plea. In the present case no such broad promises were made. The petitioner was warned by the trial court judge that Lexington was not a guarantee if he pleaded guilty. The letter from the Shawano district attorney was not the veiled threat of a prosecutor delivered within hearing distance of a defendant right before trial but instead a simple listing of petitioner's alternatives for petitioner to consider prior to arraignment. For these same reasons

United States v. Harris, 301 F.Supp. 996 (E.D.Wis.1969), is inapplicable.

Applying the "totality of circumstances" test, United States ex rel. Grays v. Rundle, 3 Cir., 428 F.2d 1401, 1403 (1970), I find that petitioner's plea was a knowing, intelligent, and voluntary act constituting a valid waiver of his constitutional rights.

2. *Whether petitioner's constitutional right to effective assistance of counsel at the trial court level was satisfied by Attorney Snyder's efforts in representing petitioner in this case.*

Petitioner argues that his trial attorney's failure to investigate the facts of the state's case, the law in Wisconsin pertaining to battery, and the circumstances surrounding his Shawano County confession constituted such inadequate representation as to be a denial of his sixth amendment right to counsel.

When faced with the contention that trial counsel was insufficient, the federal courts have devised a test which must be met before a petition for habeas corpus will be granted. In opinion after opinion, the courts state that a claim of inadequate representation can prevail " 'only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court.' " Cardarella v. United States, 375 F.2d 222, 230 (8th Cir. 1967). The attorney's conduct of the case must turn the trial into a "sham." Sims v. Lane, 411 F.2d 661, 663 (8th Cir. 1967). The standard warns potential habeas corpus petitioners that retrospective disagreement over trial tactics, Cantrell v. United States, 413 F.2d 629, 632 (8th Cir. 1969), or disappointment over lack of success, United States v. Hayes, 444 F.2d 472, 475 (5th Cir. 1971), are not the ingredients of a successful application. The "farce and mockery" standard—

" * * * exists in the law only as a metaphor that the defendant has a

heavy burden to show requisite unfairness. \* \* \* The appropriate standard \* \* \* is whether gross incompetence blotted out the essence of a substantial defense." Scott v. United States, 138 U.S.App.D.C. 339, 427 F.2d 609, 610 (1970).

Thus, petitioner must show that the alleged failure of his trial counsel to adequately advise him both on the facts and the law surrounding the Shawano County charges "blotted out the essence of a substantial defense." I do not believe that petitioner met his burden of proof.

█ Admittedly, petitioner's counsel did not conduct a thorough examination into the facts and circumstances surrounding the Shawano County charges, but in view of the petitioner's willingness to admit his guilt and his desire to have these charges consolidated, I cannot find as a matter of law that the defendant did not receive adequate representation.

In State of Missouri v. Turley, 443 F. 2d 1313 (8th Cir. 1971), petitioner's counsel was appointed only fifteen to thirty minutes before the hearing in which petitioner pleaded guilty. Counsel did very little for the petitioner who had already decided to plead guilty. Although that court noted that "This practice is, of course, not recommended or encouraged," 443 F.2d 1313, 1314, the failure to investigate was not "such a dereliction of duty as to make the proceedings a farce \* \* \*." 443 F.2d 1313, 1317.

In Clarke v. Burke, 440 F.2d 853, 856 (7th Cir. 1971), the court found that the failure of the trial attorney, conducting his first jury trial, to request evidence, potentially favorable to his client, from the prosecution did not result in a " 'sham and mockery of justice' so as to amount to a denial of Sixth Amendment rights to effective representation." Even though the court in United States v. Cox, 439 F.2d 86, 88 (9th Cir. 1971), agreed with petitioner that his trial counsel's (1) failure to use pretrial discovery, (2) waiver of jury trial, (3) stipulation to incriminatory evidence, (4) failure to object to admission of an incriminatory telephone conversation, and (5) failure to call a witness potentially favorable to the defense "might be viewed as poor trial tactics, \* \* \* such actions, even if 'poor' or 'careless', did not rise to the dignity of plain or constitutional error."

In the present case, petitioner's attorney had conferred with petitioner several times over a period of a month and a half. His client faced a battery of twelve charges. Petitioner was a drug addict who made it clear to the trial attorney that he desired hospital treatment at Lexington. Between the time of his appointment as counsel for the petitioner and the sentencing, Mr. Snyder attempted to obtain information from the federal authorities about procedures for placing state defendants in Lexington and conferred with the trial court to discuss a disposition whereby petitioner would be placed on probation and subsequently referred to Lexington. Even if in his efforts to comply with his client's wishes Snyder chose not to thoroughly review all segments of the case against the petitioner, his representation was not so inadequate as to turn the proceedings into a "sham or farce."

The cases cited by petitioner in defense of his petition are distinguishable on their facts. In Jones v. Cunningham, 313 F.2d 347 (4th Cir. 1963), the petitioner's attorney was appointed the day before his trial after the petitioner had been interrogated by the police for several days without being able to contact an attorney. The attorney did nothing more than look at the six-count indictment largely based on the dubious interrogation and tell the petitioner he "was guilty and ought to plead so."

In Kott v. Green, 303 F.Supp. 821 (N.D.Ohio 1968), petitioner's attorney represented an indecisive client whom he met with for only a half hour to an hour, after which on the basis of no inquiry into the circumstances and law

surrounding the charge he pleaded his client guilty. In Goodwin v. Swenson, 287 F.Supp. 166 (W.D.Mo.1968), where the attorney failed to investigate any of the circumstances surrounding his client's incriminating statement and made no inquiry as to his client's sanity, the district court granted the petition on grounds of insufficient counsel. Unlike the facts of the present case, the attorneys in the three cases cited by petitioners used none of their legal skills to defend their clients. Cursory examination of the facts in the present case shows that petitioner's attorney used an important skill of a defense attorney—negotiating a plea favorable to his client—which for reasons beyond his control did not result in an outcome pleasing to petitioner.

3. *Whether petitioner's constitutional right to effective assistance of counsel for his post-conviction remedies was satisfied by Attorney McDermott's efforts in representing petitioner in this case.*

Petitioner alleges that the state public defender's (1) failure to investigate the circumstances surrounding petitioner's Shawano County confession, (2) failure to visit or telephone the petitioner, (3) failure to investigate the adequacy of trial counsel's representation of petitioner, (4) failure to inquire into petitioner's mental and emotional condition before determining the potential coerciveness of the Shawano district attorney's offer of a plea bargain, and (5) failure to argue the validity of the guilty pleas and the inadequacy of trial counsel's representation constituted a denial of effective post-conviction counsel in terms of the standards required by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

In *Anders,* supra, after counsel had been appointed to represent the accused on appeal, counsel concluded that there was no merit to the appeal. He advised the court of this by letter and informed the court that the accused wished to file a brief on his own behalf. The ac-

cused's request for the appointment of another attorney was denied. He proceeded to file his own brief pro se on appeal, and his conviction was affirmed. The Supreme Court of California later denied, without opinion, indigent's petition for habeas corpus. On certiorari the Supreme Court of the United States reversed.

■ After stating that the appeal's attorney must perform his role as an advocate and not simply as amicus curiae, the court held:

"\* \* \* Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court —not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. \* \* \*" 386 U.S. 738, 744, 87 S.Ct. 1396, 1400.

Since *Anders* there have been numerous cases applying its standards. My examination of these cases leads to the conclusion that the state public defender complied with the *Anders* requirements.

■ The standards used to determine if counsel on appeal has made a "conscientious examination" of the case are the same that are used to judge the performance of trial counsel. Rawlins v. Craven, 329 F.Supp. 40 (C.D.Cal.1971).

"\* \* \* Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' \* \* \*" Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962).

The state public defender made a conscientious effort to elicit the facts on which petitioner desired to base his

post-conviction claim. Between September 26, 1967 and January 23, 1970, Mr. McDermott corresponded extensively with the petitioner. Before filing his no merit brief, he obtained and studied the trial transcript. The petitioner claims that it would have helped if he had met personally with Mr. McDermott to discuss the facts of the case, but Mr. McDermott thought otherwise and "failure of the attorney to consult with petitioner does not amount to a denial of the constitutional right to the effective assistance of counsel." Smith v. Cox, 435 F.2d 453, 459 (4th Cir. 1970).

At the time that Mr. McDermott filed his no merit brief, he knew that his client had pleaded guilty to a consolidated twelve-count indictment, that his client had a serious problem with narcotics, that petitioner alleged *Miranda* violations arising out of the Shawano County charges, that petitioner alleged coerciveness on the part of the Shawano County district attorney in his plea bargain with petitioner, and that the trial court judge only engaged in a cursory inquiry of petitioner's understanding of his guilty plea. Only after he filed the no merit brief was Mr. McDermott informed by petitioner that he believed that his trial counsel had been ineffective and that his mail to McDermott was being censored. As a result, at the time he filed his no merit brief, McDermott did not know of the one factor, insufficiency of counsel, that could have potentially overcome the rule that a guilty plea results in a waiver of one's constitutional rights. Based on the law relating to plea bargaining and guilty pleas and the information given to him by petitioner as of January 23, 1970, Mr. McDermott's decision that petitioner's case had no merit was a reasonable one.

After describing the procedures used in the trial court's arraignment of petitioner in light of the standards required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Mr. McDermott informed the court that some recent Wisconsin Supreme Court decisions led him to conclude that *Boykin*, supra, could not be applied retroactively to the petitioner. In doing so, McDermott complied with the *Anders* requirement that he conscientiously examine the record before requesting to withdraw. McDermott included in his no merit brief one argument he thought petitioner might use in appealing one of his convictions. He sent a copy of the brief to both petitioner and the court, thus permitting petitioner to raise any other points for the court to consider in deciding the case.

Petitioner argues that Suggs v. United States, 129 U.S.App.D.C. 133, 391 F.2d 971 (1968), makes clear that McDermott failed in his representation of the petitioner. In *Suggs*, the court found that court-appointed counsel did nothing more than supply the court with a memorandum listing the points of the Government's case against his client and the points his client wished to make along with his own criticisms of his client's arguments. In effect, counsel in *Suggs* became an attorney for the Government. However, *Suggs* does not hold that "[a]ppointed counsel" is "required to accept a client's views by asserting points his good conscience would reject * * *." 391 F.2d 971, 974. Mr. McDermott's letters and his testimony in this court show that he rejected petitioner's claims in good conscience. His actions were consistent with the actions of other post-conviction counsel in United States v. Minor, 444 F.2d 521 (5th Cir. 1971); United States v. Fisher, 442 F.2d 1018 (2d Cir. 1971); Rawlins v. Craven, 329 F.Supp. 40 (C.D.Cal.1971); and Brandl v. Cady, 322 F.Supp. 1076 (E.D.Wis.1971), where petitioners' applications for habeas corpus relief were denied.

It is therefore ordered that the petition for writ of habeas corpus be and it hereby is denied.