William W. WINEGAR, Petitioner,

v.

**CORRECTIONS DEPARTMENT,**
**Respondent.**

No. M24–72 C. A.

United States District Court,
W. D. Michigan, N. D.

Aug. 19, 1975.

I. He was deprived of his Sixth Amendment right to counsel prior to entering his guilty plea.

II. His guilty plea was not intelligently and voluntarily made.

III. His guilty plea was coerced.

IV. The State's appeal to the Michigan Supreme Court was based in part upon a fraudulently prepared transcript of the trial proceedings.

The respondent filed a motion to dismiss the petition for failure to state a claim upon which relief may be granted. An evidentiary hearing was held on May 12, 1975 and on June 2, 1975, at which petitioner was represented by counsel.

### I

Petitioner claims that he was denied his Sixth Amendment right to counsel. This is not the first time petitioner has raised this issue in a habeas petition. Petitioner made this identical claim in a habeas petition filed by him in the United States District Court for the Eastern District of Michigan in 1968. *Winegar v. Kropp,* Civil Action No. 31051. Judge Kaess in an opinion issued on May 28, 1968, found this claim to be without merit. He stated:

> "This is precisely the same issues presented before the Michigan courts and, in view of the record, this factual conclusion by the petitioner that he was deprived of his right to counsel, is without foundation.

> "The record is clear that the petitioner was informed of his right to counsel and counsel would be appointed if he were financially unable to employ counsel. Informed of this, petitioner still desired to plead guilty. There is no indication that any rights of the petitioner were not protected and the reasoning of the Michigan Supreme Court and its application of the law is both sound and correct. Petitioner voluntarily waived counsel and mere dissatisfaction with the sentence imposed is not a basis for the issuance of a writ of habeas corpus."

J. Kent Bourland, Hancock, Mich., for petitioner.

James R. Stegman, Asst. Atty. Gen., Lansing, Mich., for respondent.

### OPINION AND ORDER

FOX, Chief Judge.

This is a petition for a writ of habeas corpus.

On November 17, 1961, petitioner was convicted in the Circuit Court of Ingham County, Michigan, upon his plea of guilty to a charge of assault with intent to commit murder (C.L.1948 § 750.83). He now attacks the validity of the conviction on various grounds, which may be summarized as follows:

■ Although the doctrine of *res judicata* is generally held not to be applicable in habeas proceedings, the court would be fully justified in rejecting petitioner's claim on this issue since it was resolved adversely to the petitioner by Judge Kaess in the proceeding before him. This is so even though Judge Kaess based his decision on the state court record and did not hold an independent evidentiary hearing. See *Matthews v. Wingo*, 474 F.2d 1266, 1268 (6th Cir. 1973), cert. den. 411 U.S. 985, 93 S.Ct. 2283, 36 L.Ed.2d 963 where the court stated:

> In December 1971, Matthews filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Kentucky, alleging a violation of due process of law in that he was convicted at a time when he was not competent to enter a plea. His sole contention was that since he was never judicially declared to be restored to sound mind, he was incompetent. This petition was denied. No evidentiary hearing was held, the District Court relying upon the evidence presented at the State hearing. This decision was not appealed. Matthews filed a second petition for a writ of habeas corpus in which he alleged again that he was incompetent to enter a plea for the same reasons as averred before, and further that he was denied the effective assistance of counsel. This petition also was denied. The issue of the competence of Matthews was rejected on the basis of the prior adjudication, and the assistance of counsel issue was denied for failure to exhaust State court remedies.

We affirm.

The District Court had the right to reject the second petition to the extent it raised the same issues as had been resolved at the first proceeding. Under 28 U.S.C. § 2244(b) and the doctrine of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), a federal district court may deny a petition for a writ of habeas corpus where the ground presented in the second petition has been determined, on the merits, adversely to the petitioner at a prior habeas corpus proceeding, and the ends of justice would not be served by reaching the merits again, 373 U.S. at 15, 83 S.Ct. 1068. Here the issue of the competency of Matthews had been previously determined and rejected in the first petition.

The first dismissal was a proper adjudication on the merits even though no evidentiary hearing was held. 28 U.S.C. § 2254(d); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Although the court is in agreement with Judge Kaess' opinion, and would be justified in rejecting petitioner's claim on the basis of that opinion, it has, nevertheless, also considered the issue. Petitioner was first arraigned on November 3, 1961, at which time he stood mute and the court entered a plea of not guilty. He was again arraigned on November 17, 1961, at which time he changed his plea to guilty. At the November 3, 1961 arraignment, the court advised him as follows:

> "The Court: The court wishes to advise you that you are entitled to be represented by a lawyer and if you are not financially able to employ one and will so advise the court, the court will see that you have a lawyer. Do you understand that?
>
> "Defendant: Yes, sir. But they have impounded all my money.
>
> "The Court: Well, you understand what I just said to you?
>
> "Defendant: Yes."
>
> (November 3, 1961 arraignment transcript, page 2)

Petitioner does not dispute that he was advised of his right to have counsel appointed if he was financially unable to employ counsel. He claims, however, that the trial court did not give him an opportunity to request counsel. The

Michigan Supreme Court found otherwise, noting that there were two full weeks between petitioner's first arraignment on November 3, 1961, when he stood mute, and his second arraignment on November 17, 1961, when he changed his plea to guilty. The court stated:

> "Defendant had many opportunities during his first arraignment to ask for the appointment of counsel. He then had two full weeks in which to make the request before being brought back to court. He had still another opportunity to request counsel before changing his plea." *People v. Winegar,* 380 Mich. 719, 726, 158 N.W.2d 395, 398 (1968).

The court agrees with that finding. Petitioner was no stranger to criminal proceedings.[1] He was not only advised of his right to appointed counsel if he was financially unable to employ one, but he was also told that if he would "so advise the court" the court would appoint counsel for him. Asked if he understood, he replied that he did. He did not choose to so advise the court, either during the initial arraignment, or during the full two weeks before he was returned to court for his change of plea, or in the conference held in the judge's chambers at the second arraignment.

 The court is well aware that the right to counsel does not depend upon a request, and that waiver of counsel cannot be presumed from a silent record. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). The record here, however, is not a silent one. The court is also aware that "waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and that petitioner did not

say "I waive counsel" in so many words. This definition of waiver, however, is followed by the following sentence:

> "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." 304 U.S. at 464, 58 S.Ct. at 1023.

[3] This, then, is a case of an accused, who is no stranger to the judicial process, who is told that he has the right to appointed counsel if he cannot afford to hire one, and that if he will so advise the court, the court will appoint counsel for him. He is asked if he understands this, and he replies that he does. He chooses not to do so. Under the circumstances, the court finds that petitioner was fully advised of his right to appointed counsel, that he had ample opportunity to request counsel, that knowing and understanding his right he chose not to have counsel, and that his choice was intentional, voluntary, and knowledgeable.

## II

Petitioner claims that his plea of guilty was not intelligently and voluntarily made because he was not advised of his right not to incriminate himself, his right to confront his accusers, the nature of the charge, and the consequences of entering a guilty plea.

 It should be noted at the outset that the guilty plea in this case was taken in 1961, long before *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *Boykin* held that a guilty plea involves a waiver of the privilege against self-incrimination, of the right to confront one's accusers,

1. The Michigan Supreme Court noted that his criminal record consisted of a conviction for burglary in 1943, accompanied by two parole violations, a conviction for burglary of an inhabited building in the nighttime in 1946, conviction of auto theft and arson in 1955, as well as the present conviction, and a kidnapping conviction in 1962. 380 Mich. 719, note 1, 158 N.W.2d 395. In another habeas petition filed in this court (Case No. M105–73CR), petitioner states that his 1943 and 1946 burglary convictions in Ohio were set aside in 1972.

and of the right to trial by jury, and that a waiver of these important constitutional rights could not be presumed from a silent record. The Michigan counterpart of *Boykin* is *People v. Jaworski,* 387 Mich. 21, 194 N.W.2d 868 (1972). It is now well established, however, that both *Boykin* and *Jaworski* have only prospective effect and do not apply to pleas of guilty taken before *Boykin's* decisional date, June 2, 1969. As to *Boykin,* see *Lawrence v. Russell,* 430 F.2d 718 (6th Cir. 1970); *United States ex rel. Rogers v. Adams,* 435 F.2d 1372 (2nd Cir. 1970); *United States ex rel. Hughes v. Rundle,* 419 F.2d 116 (3rd Cir. 1969); *Smith v. Cox,* 435 F.2d 453 (4th Cir. 1970); *Dominguez v. Henderson,* 447 F.2d 207 (5th Cir. 1971); *Meller v. State of Missouri,* 431 F.2d 120 (8th Cir. 1970); *Moss v. Craven,* 427 F.2d 139 (9th Cir. 1970); *Perry v. Crouse,* 429 F.2d 1083 (10th Cir. 1970).

As to *Jaworski,* see *People v. McMillan,* 389 Mich. 114, 204 N.W.2d 682 (1973); *People v. Duffield,* 387 Mich. 300, 197 N.W.2d 25 (1972); *People v. Carlisle,* 387 Mich. 269, 195 N.W.2d 851 (1972); *People v. Butler,* 387 Mich. 1, 195 N.W.2d 268 (1972).

Moreover, federal courts have held that even *Boykin* does not require that a state defendant entering a guilty plea be specifically advised by the court of the three rights enumerated in that opinion. *Wilkins v. Erickson,* 505 F.2d 761 (9th Cir. 1974); *McChesney v. Henderson,* 482 F.2d 1101 (5th Cir. 1973); *Wade v. Coiner,* 468 F.2d 1059 (4th Cir. 1972). In *Wilkins v. Erickson,* supra, the petitioner challenged the validity of his guilty plea on the ground that he had not been advised of his privilege against self-incrimination, his right to confront his accusers, and his right to a jury trial. The district judge held that a plea could be voluntary and intelligent without specific articulation of the three *Boykin* rights as long as it could be determined that the plea of guilty was in fact voluntarily and in-

telligently made. In affirming the district court, the court stated:

"The district court's decision, however, is supported by Supreme Court decisions subsequent to *Boykin* and several circuits. The rigid interpretation of *Boykin* urged by Wilkins has not been adopted by the Supreme Court in subsequent decisions on voluntariness of guilty pleas. In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court citing *Boykin,* upheld a guilty plea as voluntary and intelligent even though defendant had not been specifically advised of the three rights discussed in *Boykin.* The Brady Court clarified *Boykin* by stating, '[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.' 397 U.S. at 747–748 fn. 4, 90 S.Ct. at 1468. In *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), the Court stated that in determining the validity of guilty pleas the 'standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' Specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea." Id. at 763.

▆ Thus, even if *Boykin* were given retroactive effect, failure of the court to specifically advise petitioner of the three *Boykin* rights would not invalidate his plea. The test, as always, is whether the plea was voluntary and intelligent.

It is clear from the arraignment transcripts that petitioner was informed of the charge against him, and when asked "Do you understand the charge, Mr. Winegar?", he replied "Yes, sir, I do." (November 3, 1961 Transcript, page 2) He replied similarly when asked if he understood that he was entitled

to have a trial by jury (Id, page 3) When he subsequently reappeared on November 17, 1961, for the purpose of changing his plea, the following colloquy occurred:

"The Court: Wine-e-gar. Mr. Winegar, you were before the court on the 3d day of November, 1961. The court then advised you of your rights, at which time you said you preferred to stand mute and the court entered a plea of not guilty for you. Now it is your desire, as I understand, to plead guilty, is that correct?

"Defendant: Yes, your Honor.

"The Court: And that is what you are doing now, is pleading guilty to this offense?

"Defendant: Yes.

"The Court: Has anyone made you any promise of any kind to induce you to plead guilty?

"Defendant: No.

"The Court: Has anyone stated to you that if you would plead guilty he would secure leniency from the court?

"Defendant: No.

"The Court: Then are you pleading guilty because you actually are guilty?

"Defendant: Yes.

"The Court: Very well, I will talk with him. (Conference in chambers.)

"The Court: Let the record show that the court has conferred with Mr. Winegar relative to the circumstances of the crime, is convinced that he committed the crime, that his plea was freely, understandingly and voluntarily made without undue influence, compulsion, or duress, and without promise of leniency. Therefore, his plea is accepted and he is remanded to the custody of the county sheriff to await sentence. That is all."

(November 17, 1961 Arraignment Transcript, pages 2 and 3.)

This record clearly establishes that petitioner's guilty plea was voluntarily and intelligently made. He acknowledged his desire to plead guilty and that he was aware that this was what he was doing. He further stated that no one had told him that he would secure leniency if he pleaded guilty, and that he was pleading guilty because he actually was guilty. The trial judge then conferred with the petitioner in his chambers, following which the judge stated on the record that he was convinced that the petitioner "committed the crime, that his plea was freely, understandingly, and voluntarily made without undue influence, compulsion, or duress, and without promise of leniency."

Petitioner complains of the fact that the in-chambers conference was not recorded. However, the court notes that at the time this plea was accepted (1961), it was a common practice for Michigan trial judges to hold such off-record conferences in chambers.[2] Moreover there is no reason to believe that the trial judge did not do in chambers that which he states on the record he did do. On the contrary, there is a presumption that the judge properly performed his duties. As stated in *Bute v. Illinois*, 333 U.S. 640, 671, 68 S.Ct. 763, 779, 92 L.Ed. 986 (1948):

"Doubts should be resolved in favor of the integrity, competence and proper performance of their official duties by the judge and the State's attorney. They were state officials lawfully chosen to discharge serious public responsibilities under their oaths of office. Especially, in a self-governing state and nation, governmental stability depends upon the giving of full faith and credit in form, sub-

---

**2.** See *Edwards v. People*, 39 Mich. 760, 763, (1878), indicating that this practice allowed the defendant to speak more freely outside the routine business of court and outside the presence of police officials and the prosecutor. See also *Roddy v. Black*, 516 F.2d 1380 (6th Cir. 1975), holding that evidence extrinsic to the transcript of the plea's acceptance may be used to establish that the plea was voluntary and intelligent.

stance and spirit to public acts, records and judicial proceedings not only among the states but among individuals and between their State and Federal Governments."

Michigan's highest court has passed on the manner in which petitioner's plea was taken and has concluded that the procedure satisfied then existing statutory and court rule requirements. *People v. Winegar*, 380 Mich. 719, 158 N.W.2d 395 (1968). This court has no reason to hold otherwise.

■ The court also notes that petitioner is now claiming that he did not understand the nature of the charge against him and the consequences of his plea. This claim is refuted by the record, since the court could not have concluded, as it did, that the plea was "understandingly made" without satisfying itself that the petitioner understood the nature of the accusation and the consequences of his plea. Moreover, it also appears that the petitioner made no such claim in the state court. See *People v. Winegar*, supra, where the court stated:

> "Winegar himself does not claim, nor has he ever claimed that he did not understand the nature of the accusation and the consequences of his plea." *Id*. at 728, 158 N.W.2d at 399.

■ His present claim as to this issue, therefore, has the additional infirmity of failure to exhaust state court remedies.[3]

### III

■ Petitioner also claims that his guilty plea was coerced. More specifically, he claims that he was induced to change his plea of not guilty to guilty because of acts of physical abuse, intimidation, threats to his family and friends, and incommunicado incarceration. The court has carefully reviewed the evidence adduced at the evidentiary hearings and by depositions and finds that this claim is not supported by the record. On the contrary, the court finds that his plea was voluntarily and intelligently made, free of duress or coercion. This was the conclusion reached by the trial judge who, after conferring with the petitioner as to whether the plea should be accepted, stated that he was

> ". . . . . convinced that [petitioner] committed the crime, that his plea was freely, understandingly, and voluntarily made without undue influence, compulsion, or duress, and without promise of leniency." (Arraignment transcript of November 17, 1961, page 3)

This was also the conclusion of Judge Kaess who passed on the same issue in petitioner's prior habeas corpus petition filed in the Eastern District of Michigan, *Winegar v. Kropp*, supra. Judge Kaess stated:

> "The plea of guilty given by Winegar was free and voluntary, and given knowingly and without coercion, and the record is clear in this regard."

This court reaches the same conclusion.

Petitioner claims that the prosecution's appeal to the Michigan Supreme Court was based in part upon a fraudulently prepared transcript of the trial proceedings. This claim is not made with reference to a prepared transcript, but rather to quotations from a pleading filed by an assistant prosecuting attorney of Ingham County.[4] In that pleading, the assistant prosecutor failed to include asterisks to show deleted matter from the transcript from which

---

3. It is also appropriate to note that the requirements of Rule 11 of the Federal Rules of Criminal Procedure are not applicable to state court criminal proceedings. *Lawrence v. Russell*, 430 F.2d 718, 721 (6th Cir. 1970).

4. The pleading is entitled "Amicus Curiae Answer to Petition for Writ of Habeas Corpus and Ancillary Writ of Certiorari." It is attached as Exhibit 2 to the respondent's Second Supplemental Brief herein.

he was quoting. The transcript in pertinent part was quoted as follows:

> "THE COURT: The Court wishes to advise you that you are entitled to be represented by a lawyer and if you are not financially able to employ one and will so advise the Court, the Court will see that you have a lawyer. Do you understand that?
>
> "THE RESPONDENT: Yes."

In actual fact, the pertinent part of the transcript reads:

> "THE COURT: The Court wishes to advise you that you are entitled to be represented by a lawyer and if you are not financially able to employ one and will so advise the Court, the Court will see that you have a lawyer. Do you understand that?
>
> "DEFENDANT: Yes, sir. But they have impounded all my money.
>
> "THE COURT: Well, you understand what I just said to you?
>
> "DEFENDANT: Yes."

However, in a later brief filed by the prosecutor in opposition to a petition for certiorari, the failure to include asterisks to indicate where matter had been deleted from the quoted transcript was fully acknowledged.[5] More importantly, the decisions of the Michigan Supreme Court in *People v. Winegar*, 380 Mich. 719, 158 N.W.2d 395 (1968) and of the Michigan Court of Appeals in *People v. Winegar*, 4 Mich. App. 547, 145 N.W.2d 257 (1966) both quote the pertinent portions of the transcript in full. Thus, it is apparent that those courts had access to and were fully aware of the complete and proper transcript, and that neither court was misled by the incomplete quotation which appeared in one of the pleadings. The court concludes that this claim of the petitioner is without merit.

For the reasons herein stated, the petition is denied.

It is so ordered.

---

5. Exhibit 3 to respondent's Second Supplemental Brief herein.