**UNITED STATES ex rel. Henry A. ROGERS, Appellant,**

v.

**Frederick E. ADAMS, Warden of Connecticut State Prison, Appellee.**

**No. 329, Docket 35187.**

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1970.

Decided Dec. 29, 1970.

Wesley W. Kirtley, New York City, for appellant.

Edmund W. O'Brien, State's Atty., New London County, for appellee.

Before MOORE, KAUFMAN, and HAYS, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

On this collateral challenge to the voluntariness of Rogers's state guilty plea, 28 U.S.C. § 2254, we are asked to apply retroactively the rule announced in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), that a state trial judge should not accept a plea of guilt "without an affirmative showing that it was intelligent and voluntary." *Id.* at 242, 89 S.Ct. at 1711. We decline to do so.

The voluntary character of the plea in this case is hardly any longer an issue. Rogers's Connecticut habeas corpus petition, dated September 12, 1969, and his subsequent federal petition, filed in the District of Connecticut, January 13, 1970, specify two occurrences that allegedly reduce Rogers's 1965 guilty pleas[1] to less than free, knowing, and voluntary acts. See Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 473 (1962). Initially, Rogers would have us find, or at least order that the district court pursue an inquiry into the claim, that when his pleas were taken on February 2 and 16, 1965, Rogers was still suffering from a state of shock. This, he claims, was induced by the state police at the time they arrested him on January 19, 1965, when they allegedly threatened to prosecute his father for stealing or removing an automobile from the scene of an otherwise unidentified accident. Additionally, Rogers complains that the experienced Public Defender who represented him at both plea proceedings, George Gilman, threatened to secure a 30-year sentence for Rogers unless he pleaded guilty.

Apart from the inherent incredibility of the first allegation, and the conclusory and fragmentary quality of the second, Rogers was unable to buttress either claim during a full hearing held November 12, 1969 on Rogers's state habeas corpus petition. Evidence adduced at that hearing amply supports the finding of the state court that his guilty pleas were altogether "freely, understandingly, and voluntarily made," thus leading to the dismissal of Rogers's petition. To substantiate the propriety of this conclusion we note that Gilman testified that Rogers fully understood the charges against him, that he was able to discuss them understandingly, and that he entered his pleas voluntarily. Gilman had made a similar statement at the February 2 plea proceeding. Also a state appointed psychiatrist who examined Rogers at Gilman's request on January 23, 1965 (between Rogers's arrest and his first guilty plea), reported that Rogers was able to understand the proceedings and cooperate with his counsel. The only smattering of evidence bearing on Rogers's claims was testimony by Gilman that he had quite properly informed Rogers at one time that Rogers faced a 75-year sentence if convicted for all six crimes charged against him. Indeed, Rogers himself has never asserted his innocence and he admitted at the state hearing that he would have no defenses

---

[1] On February 2, 1965, Rogers pleaded guilty to kidnapping, injury or risk of injury to a minor child, carrying a weapon in a motor vehicle, and impersonating a police officer. He pleaded not guilty to indecent assault and sodomy. On February 16, Rogers changed his plea to guilty of indecent assault, and prosecution of the sodomy charge was discontinued. All six counts in the information filed against Rogers were founded on a single brutish episode with a small boy.

to raise if he were ever tried. In the federal habeas corpus proceedings, *Judge Blumenfeld* surveyed this evidence, as we have, and we agree with his conclusion that the state finding of voluntariness is "manifestly well founded." Rogers v. Adams, Civ.No.13638 (D. Conn., filed Jan. 12, 1970). See Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

Nonetheless, Rogers urges appropriately that if Boykin v. Alabama, *supra*, applied to the 1965 pleas, we would be required to reverse Rogers's conviction, because there is no hint in this record that before the trial judge accepted Rogers's guilty pleas, there was any "affirmative showing" that they were voluntary. The four courts that to our knowledge have passed on this question, however, have all agreed that *Boykin* should apply only to pleas taken after June 2, 1969, the date of that decision. United States ex rel. Hughes v. Rundle, 419 F.2d 116 (3rd Cir. 1969); United States ex rel. Ward v. Deegan, 310 F. Supp. 1076 (S.D.N.Y.1970); United States ex rel. Wiggins v. Commonwealth 302 F.Supp. 845 (E.D.Pa.1969); Commonwealth v. Godfrey, 434 Pa. 532, 254 A.2d 923 (1969). We find ourselves in agreement with these holdings.

Each of the familiar trilogy of factors entering into a determination of the appropriateness of retroactivity *vel non*, Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); [2] Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), requires us to decide as we do. We take note of a 1967 study which found that in eight states (the only ones where the information was available) and the District of Columbia, guilty pleas accounted for an average of about 87% of all criminal convictions in state trial courts of general jurisdiction. Task Force on the Administration of Justice, The President's Commission on Law Enforcement and Administration of Justice, Report: The Courts 9 (1967). In Connecticut, for example, 93.9% of all convictions were found attributable to guilty pleas. Although definitive information is obviously not available to us, common sense suggests that if reliance on pre-*Boykin* law was at all substantial, as it surely was, the impact of a retroactive application of *Boykin* on the administration of state justice could be calamitous. The Pennsylvania Supreme Court discussing this issue observed that in "a great many of these [pre-*Boykin* guilty pleas], inadequate *on-the-record* examinations were conducted." Commonwealth v. Godfrey, 434 Pa. 532, 536, 254 A.2d 923, 925 (1969) (emphasis in original). Far removed from state processes as we are from our vantage point, we would not presume to challenge that finding or suggest that it is not applicable, in greater or lesser degree, to other states.

Nor do we believe that retroactivity is appropriate to give effect to the apparent primary objectives of *Boykin*, a factor that we weigh most heavily in our calculation. Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). We refer to those purposes which would serve to facilitate both the initial determination and a later review of the voluntary nature of a plea, see Boykin v. Alabama, 395 U.S. at 238, 89 S.Ct. at 1709; *id.* at 245, 89 S.Ct. at 1713, (Harlan, J., dissenting). Note, The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 183 (1969); cf. Halliday v. United States, 394 U.S. 831, 832, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). We believe they will be adequately served if *Boykin* is adhered to in future plea proceedings. We would not hesitate to apply *Boykin* retroactively, however, if we were of the view that the new rule substantially affected "the very integrity of

2. We are to examine "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

the fact-finding process," Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965). Although we do not doubt that *Boykin* will have a salutary effect, we are "concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect" the integrity of the state proceedings. Johnson v. New Jersey, 384 U.S. 719, 729, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882 (1966). A state prisoner who believes himself aggrieved by a plea proceeding and who raises a sufficiently credible challenge to the voluntary nature of his plea, may have a federal hearing. If his assertions are established, his plea will be vacated. In *Johnson*, the Court declined to apply Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), retroactively, in part because federal review was similarly available to test the voluntary nature of inculpatory statements which would be inadmissible under *Miranda* or *Escobedo*.

For reasons closely analogous to those we have relied upon here, the Supreme Court in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), applied only prospectively the federal counterpart of *Boykin*, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), holding that upon the acceptance of a plea of guilt in a federal court, the trial judge must comply literally with the requirements of F.R.Crim.P. 11 or the plea will be vacated. We do not mechanically apply *Halliday* to the question here (*McCarthy* of course was not Constitutionally grounded) [3] but the parallel reasoning of that case confirms our independent analysis.

Affirmed.

---

**3.** In *Halliday*, however, the Court prefaced its analysis by remarking that it would apply the same factors to decide the retroactivity of *McCarthy* as it would if *McCarthy* were a Constitutional decision. 394 U.S. at 832, 89 S.Ct. 1498.