**John Wayne LUCAS, Petitioner,**

v.

**Henry E. COWAN, Warden, Kentucky State Penitentiary, Respondent.**

**Civ. A. No. 7157–A.**

United States District Court,
W. D. Kentucky,
Louisville Division.

Aug. 15, 1973.

John Wayne Lucas, pro se, Paul K. Murphy, Louisville, Ky., for petitioner.

Ed. W. Hancock, Atty. Gen. of Ky., Frankfort, Ky., for respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, OPINION AND ORDER

ALLEN, District Judge.

Petitioner, John Wayne Lucas, having exhausted his state court remedies, now asks that this Court set aside his sentence of life imprisonment imposed upon him by the Breckinridge Circuit Court, Hardinsburg, Kentucky, on November 28, 1962, and that he be allowed to go free or, in the alternative, be granted the right to withdraw his plea of guilty.

The basic allegation of the petitioner is to the effect that his plea of guilty was induced by a representation made to him by the Commonwealth's Attorney, Mr. Thomas H. Cubbage, now deceased, that if petitioner would plead guilty to a charge of armed robbery in the Meade Circuit Court, Kentucky, and agree to an 8 year sentence there, that Mr. Cubbage would, in turn, recommend to the judge of the Breckinridge Circuit Court, where another charge of armed robbery was pending against the petitioner, that a concurrent 8 year sentence be imposed upon the petitioner.

Unfortunately, Mr. Cubbage, as stated before, is now deceased and the order of the Breckinridge Circuit Court entered on the 28th day of November, 1962, recites that Melvin K. Duke was appointed to represent the defendant, and that the defendant in person and by counsel waived formal arraignment and entered a plea of guilty to the charge of "Armed Robbery", "second and third counts" thereof. The order further recites that "the Court being sufficiently advised, it is there considered, ordered and adjudged, by the Court that the defendant is guilty as charged in the indictment and the Commonwealth Attorney, having recommended to the Court that said defendant's penalty to be fixed at Life Imprisonment in the State Reformatory and said recommendation of the said Commonwealth Attorney is hereby ac-

cepted and approved by the Court, to all of which the defendant agrees."

The petitioner alleges in his pleading and in his testimony that he was held in custody in the jail for prisoners who were to stand trial at the Meade Circuit Court criminal term in May, 1962, when he was visited by Mr. Cubbage, who was Commonwealth's Attorney for both Meade County and Breckinridge County. The allegation made is that according to the petitioner the prosecutor agreed to recommend 8 years for the offense charged in Meade Circuit Court and the offense charged in Breckinridge Circuit Court, in return for the petitioner's agreement to plead guilty. Petitioner then alleged and testified that after being confined in the state penitentiary at Eddyville, Kentucky, for a period of approximately 6¾ months, he was brought to Hardinsburg for trial on the 28th of November, 1962. He then testified that Mr. Cubbage approached him in the courthouse prior to arraignment and prior to the appointment of Mr. Duke as counsel for petitioner, and that Mr. Cubbage stated he could not keep his promise as to the recommendation of a 8 year concurrent sentence. It is the petitioner's testimony that Cubbage stated that the only alternatives available to the petitioner would be a life sentence or the electric chair. Petitioner then states that he requested Mr. Cubbage to recommend a sentence of 21 years and that Mr. Cubbage declined to do, but that Mr. Cubbage stated he would recommend a life sentence if this was acceptable to petitioner.

Petitioner's father testified that Mr. Cubbage told him that his son would get the electric chair unless he entered a plea of guilty, and that he had been unable to keep his promise concerning the 8 year recommendation because of pressure put upon him by the prosecuting witness. Mr. Lucas, Sr. then stated that he recommended to his son that the life sentence be accepted and that his son thereupon did accept it.

Mr. Duke, who had at the time some 11 years of law practice in the Breckin-ridge Circuit Court, stated that he was advised by Judge Beard, the sentencing judge, that petitioner wished to enter a plea of guilty and therefore the judge was appointing Mr. Duke as counsel to represent him. Mr. Duke thereupon went from his office to the courthouse and talked to petitioner for a few minutes. Upon being advised by the petitioner that the Commonwealth's Attorney would recommend the imposition of a life sentence in return for a guilty plea, Mr. Duke concurred in the entry of such a plea.

Mr. Duke frankly does not recall whether or not the petitioner made any mention to him of the alleged "welching" on the 8 year recommendation by Mr. Cubbage, but states that had he been made aware of a breach of promise he would certainly have taken the appropriate steps to represent his client. In light of the fact petitioner advised Mr. Duke that he wished to enter a plea of guilty, Mr. Duke made no attempt to secure the names of any witnesses other than the petitioner and possibly the prosecuting witness, nor did he have any meaningful discussion concerning the potential evidence in the case with petitioner.

Turning to petitioner's claims regarding the alleged breach of promise by Mr. Cubbage, it is worthy of note that these claims are not substantiated by any evidence of any disinterested witnesses, being confined only to petitioner himself and his father. It is, indeed, regrettable that Mr. Cubbage is not alive to give his version of the evidence that transpired prior to the entry of the plea of guilty, and it is also regrettable that the court reporter, who was ordered to transcribe the post-conviction proceedings held before Judge Beard, at which Mr. Cubbage was one of the witnesses, did not transcribe these proceedings.

The credibility of the petitioner and his father is very doubtful and particularly so in light of the fact that Mr. Duke has no recollection of being told by petitioner of any alleged 8 year recommendation made by Mr. Cubbage. Fur-

ther, the petitioner's own statement to the effect that he asked the prosecuting attorney for a 21 year sentence would seem to undermine his credibility considerably, since if he had a promise of an 8 year sentence, it does not seem likely that he would renounce that promise and bargain for a sentence 13 years in excess of that promised to him.

Furthermore, petitioner testified that Judge Beard asked him if there was any reason why sentence should not be imposed upon him and he stated that he made no response to that question. Surely, if the promises that he states were made to him had, in fact, been made to him, he would have made some mention of them to the judge, especially in light of the vast discrepancy of an 8 year sentence and a life sentence.

■ The Court, therefore, finds that the petitioner has failed to meet his burden of proof to show that the plea of guilty was induced by the false promise of a lenient sentence made to him by the prosecutor. Therefore, the holding in Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) is not applicable since, in that case, the state admitted that it had made a promise not to make any recommendation at the time of sentencing, which promise was breached.

Counsel for petitioner, at the evidentiary hearing before this Court, stated that petitioner's conviction should be set aside because his plea of guilty was not voluntarily and intelligently entered. Counsel relies upon the case of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (decided June 2, 1969). There petitioner, a 27 year old negro, pleaded guilty to five indictments alleging common law robbery. Subsequent to the entry of the plea, a jury fixed a penalty of death against the petitioner on each of the five indictments. The record did not show that the judge asked any questions of the petitioner concerning his plea of guilty and petitioner did not address the court. Apparently, petitioner's counsel was silent at the time of taking the plea. The Supreme Court held that the record did not disclose that the defendant voluntarily and understandingly entered his plea of guilty and, therefore, the convictions must be set aside.

*Boykin* was decided since the plea of guilty of the petitioner was entered in the Breckinridge Circuit Court, and it has been held by the Second, Fourth, Fifth, Eighth, Ninth and Tenth Circuits that *Boykin* should not be applied retroactively. See United States ex rel. Rogers v. Adams, 435 F.2d 1372 (2nd Cir. 1970); United States ex rel Hughes v. Rundle, 419 F.2d 116 (3rd Cir. 1970); Smith v. Cox, 435 F.2d 453 (4th Cir. 1970); Meller v. Missouri, 431 F.2d 120 (8th Cir. 1970); Moss v. Craven, 427 F.2d 139 (9th Cir. 1970); Perry v. Crouse, 429 F.2d 1083 (10th Cir. 1970); Dominguez v. Henderson, 447 F.2d 207 (5th Cir. 1971).

As pointed out in *Dominguez*, the Supreme Court's decision in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) "points to prospective application of the *Boykin* rule." In *Halliday*, the court held that "the rule announced in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) should not be retroactively applied. * * * Although this ruling was made pursuant to the Supreme Court's supervisory power over the lower federal courts, rather than on the constitutional grounds which fathered *Boykin*, the court in Halliday used the three criteria usually considered to determine whether newly adopted constitutional rulings should apply retroactively." The three criteria are set out in footnote 2 on page 209, 447 F. 2d

■ In *Halliday*, the Supreme Court pointed out that "in view of the general application of Rule 11 in a manner inconsistent with our holding in *McCarthy*, and in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11, we decline to

apply *McCarthy* retroactively." Likewise where only six states, prior to *Boykin*, required the trial judge to affirmatively determine the voluntariness of a guilty plea by questioning him as to the basis for such a plea, and placing the questions and answers on record, to retroactively apply *Boykin* would not be justified here.

Finally, the petitioner complained at the hearing that he was not afforded competent or effective assistance of counsel. This complaint is based on the theory that since Mr. Duke only talked to petitioner for a few minutes before the entry of the plea of guilty, and did not ascertain who the witnesses in the case might be or what the governing facts were, his assistance was of so little value as to amount to a constitutional violation.

The record discloses that petitioner and Mr. Cubbage had entered into an agreement whereby petitioner would enter his plea of guilty in return for a recommendation of a life sentence. When this agreement was made known to the trial court, he immediately phoned Mr. Duke that he had been appointed to represent the petitioner. When the petitioner and Mr. Duke met, petitioner advised him that he wished to enter a plea of guilty on the basis of the agreement between himself and Mr. Cubbage for a life sentence recommendation. Mr. Duke, knowing that the only penalties then available for armed robbery in Kentucky were death and life imprisonment, thereupon advised the petitioner that he had made a satisfactory bargain with the Commonwealth's Attorney and, therefore, that the plea of guilty should be entered.

Mr. Duke was very candid in admitting that he made no inquiry as to who the witnesses might be, were a plea of not guilty entered, and he did not explicitly indicate in his testimony whether he inquired of petitioner as to whether petitioner was, in fact, guilty. He could give no time estimate as to the amount of time spent with the petitioner, but apparently very little time was spent in interviewing him. Mr. Duke did not state that he gave any advice to petitioner other than to enter the plea of guilty, and apparently he made no inquiry as to what had transpired in the plea bargaining which took place between petitioner and Mr. Cubbage. The Court realizes that, of course, Mr. Duke was somewhat at a disadvantage in that he received a call from the trial court advising him that the petitioner wished to enter a plea of guilty; it apparently being the practice of the trial court at that time to appoint attorneys to represent clients who had pleaded guilty in cases which involved possible life imprisonment or the death penalty.

It is accepted since Gideon v. Wainwright (1963), 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799, that the right to counsel is a fundamental right, essential to a fair trial. It is also accepted that the right to counsel is not just the perfunctory appointment of counsel, and his performing his services in a perfunctory way, but the right to counsel embraces the right to effective assistance of counsel. See Powell v. State of Alabama (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. Where a defendant in a criminal case has been denied the effective assistance of counsel, this constitutes a denial of his constitutional rights and entitles him to the issuance of a writ of habeas corpus, even though the denial took place prior to the decision in Gideon v. Wainwright, supra. See Arsenault v. Massachusetts (1968), 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5, where the Supreme Court held that "the right to counsel at trial (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799) on appeal (Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811) and at the other 'critical' stages of the criminal proceedings (Hamilton v. Alabama, supra [368 U.S. 52, 82 S.Ct. 157, 9 L.Ed.2d 114]) have all been made retroactive,

since the 'denial of the right must almost invariably deny a fair trial.'"

While the Third and Fourth Circuits have adopted the rule that the belated appointment of counsel gives rise to a prima facie presumption that the accused was prejudiced and that the burden is on the state to counter-balance the presumption, see United States ex rel Mathis v. Rundle, 394 F.2d 748 (3rd Cir. 1968) and Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967), the Sixth Circuit and the Supreme Court of the United States have reached different conclusions. In Chambers v. Maroney, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), affirming the Third Circuit's decision in 408 F.2d 1186 (1969), the Supreme Court held that while the court should make every effort to effect early appointment of counsel in all cases, they were "not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas corpus petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel."

In that case, which went to trial, petitioner had been represented by the Legal Aid Society at his first trial, but no attorney had conferred with him concerning his second trial until just a few minutes before the trial occurred. The Circuit Court of Appeals held that the appearance of a second attorney at trial just a few minutes before it took place had not resulted in prejudice. It should be noted that Mr. Justice Harlan vigorously dissented from the Court's opinion with reference to ineffective assistance of counsel.

The Sixth Circuit, in the case of Callahan v. Russell, 423 F.2d 450 (1970) reversed the district court's grant of a petition for a writ of habeas corpus on the ground of ineffective assistance of counsel due to late appointment of counsel.

However, the court did remand the case to the district court for findings on the specific issue as to whether the late appointment actually did prejudice the appellee. In *Callahan*, appellee was charged with armed robbery, larceny and kidnapping, indictments being returned on January 7, 1963. The three cases were assigned to trial on January 9, 1963. The court appointed two attorneys to represent Callahan on January 9th, and after consulting with them for about fifteen minutes, he pleaded guilty to all three indictments and was given consecutive sentences. During the fifteen minutes, appellee conferred with the attorneys and told them that he had no witnesses. They then conferred with the prosecuting attorney who agreed to allow him to submit on each of the offenses for which he was indicted and to be tried and receive the minimum sentences on each of the offenses. The attorneys then communicated this fact to the appellee and he consented thereto.

With reference to appellee's plea of ineffective assistance of counsel and involuntary plea of guilty, the Supreme Court of Tennessee, in an opinion appearing in State ex rel Callahan v. Henderson, 220 Tenn. 417, 417 S.W.2d 789 (1967), stated the following language, which is applicable here, at pages 792–793:

"We cannot say that fifteen minutes was too short a time to properly represent one under a factual situation as herein presented. Of course, if the crime is committed so as to be contestable or there was a question about it or witnesses to be found to be offered before the court to test the validity of the crime or the truth or falsity of it, then this would require time for an investigation. But if the person charged with the crime concedes to his counsel that he did these things and that he was well pleased to get out with the minimum sentence for having committed the crime, then unquestionably it could not be said

that fifteen minutes was not adequate time for consultation and investigation. Under such a situation counsel, who did work out an agreement with the District Attorney General for the petitioner to only receive the minimum sentence for the offenses of which the man conceded he was guilty, should be complimented on getting the minimum sentence."

In the instant case it is true that petitioner did not explicitly admit to counsel his guilt. It is also true that he never, at any time, made a protestation of innocence to his counsel. Petitioner knew about the possible consequence of a plea of guilty since, by his own admission, he had discussed this matter with the Commonwealth's Attorney and had been advised that the possible consequences were either the death penalty or life imprisonment.

In light of the principle that the burden is upon the petitioner to prove that the late appointment of counsel operated to his prejudice, and in view of the fact that he has not shown this Court nor apparently the post-conviction court in Kentucky, and the Court of Appeals of Kentucky, that he had any defense to the charges pending against him, to which he pleaded guilty, the Court cannot find that he was actually prejudiced by the late appointment of Mr. Duke. Suffice it to say that this Court joins with the statement made by the Supreme Court that the belated appointment of counsel in criminal cases is not to be encouraged. Furthermore, the situation where the Commonwealth's Attorney plea bargains with the accused himself does not meet the highest standards of criminal justice, but under the circumstances, does not rise to the heights of a constitutional deprivation of petitioner's rights.

In conclusion, the motion of the petitioner for a writ of habeas corpus is denied.

It is so ordered.