Louis **CAMMACK**, Petitioner,

v.

**STATE OF NEW YORK**, Respondent.

No. 78 C 581.

United States District Court,
E. D. New York.

Sept. 11, 1978.

Louis Cammack, pro se.

Louis J. Lefkowitz, Atty. Gen. of N.Y., by Gerry E. Feinberg, New York City, for respondent.

## MEMORANDUM ORDER

NEAHER, District Judge.

Louis Cammack, a prisoner at New York State's Clinton Correctional Facility,[1] has

---

1. At the time the petition was filed, Cammack was incarcerated at the Northeast Penitentiary in Lewisburg, Pennsylvania. He has since advised the court of his transfer to the Clinton Facility.

petitioned the court *pro se* for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254. The Attorney General for the State of New York, as Attorney for the respondent, has filed an affidavit in opposition to the petition, and has provided the court with transcripts of the various State court proceedings here in issue.

On June 6, 1963, petitioner and a co-defendant Jesse Smalls, pleaded not guilty in New York State Supreme Court, Kings County, to an indictment charging them with first degree murder. Thereafter, on August 1, 1963, both withdrew their previous pleas, and petitioner, who was then represented by counsel, pleaded guilty to manslaughter in the first degree, unarmed. See former New York Penal Law § 1050, amended, 1965. The record of that proceeding reflects the following exchange between petitioner and the State court judge, Justice Helfand, after counsel had indicated petitioner's intention to change his plea and before the plea was accepted by the court:

"THE COURT: Now, Louis Cammack, did you hear and understand what Mr. Ashmead [one of petitioner's attorneys] said?

"THE DEFENDANT: Yes, sir.

"THE COURT: You have, I take it, conferred with Mr. Ashmead and Mr. Kammel, your lawyers, on a number of occasions, concerning this matter?

"THE DEFENDANT: Yes, sir, I have.

"THE COURT: You know, do you not, that they in turn have consulted and conferred with the District Attorney and the Court?

"THE DEFENDANT: Yes, sir.

"THE COURT: And you are satisfied that they offer this plea on your behalf?

"THE DEFENDANT: Yes, sir.

"THE COURT: And that is what you wish to do, withdraw your prior plea of not guilty, and you want to plead guilty to the felony charge of manslaughter in the first degree, unarmed, to cover the indictment . . . which charges you

with the crime of murder in the first degree? Is that what you wish to do?

"THE DEFENDANT: Yes, sir.

"THE COURT: And are you, Louis A. Cammack, pleading guilty to manslaughter in the first degree, unarmed, because you are guilty, that on or about April 25, 1963, here in Brooklyn, acting together with your co-defendant, you shot and killed one, Prince Edward Green, and as a result of which he died thereafter; is that what you are pleading guilty to?

"THE DEFENDANT: Yes, sir.

"THE COURT: Just as I said to your codefendant, has anyone promised you in advance as to what the [sentence] would be in this case which has influenced you to offer this plea of guilty?

"THE DEFENDANT: No, sir.

"THE COURT: In other words, no promises or threats of any kind have been made which have made you take this plea?

"THE DEFENDANT: No, sir.

"THE COURT: You are doing this voluntarily and of your own free will; is that right?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now, just as I told Smalls, the Court makes no promise with respect to sentence; is that clear?

"THE DEFENDANT: Yes, sir.

"THE COURT: Except that we will make a complete investigation by the Probation Department, not only of the facts surrounding the case, but you and your background, and then determine what sentence should be imposed based on the information that I will have before me at the time of the sentence; is that clear?

"THE DEFENDANT: Yes, sir."

Plea Minutes (8/1/63), at 4–6. Justice Helfand then directed the clerk to take the guilty pleas of petitioner and his codefendant.

Cammack and Smalls, again represented by counsel, appeared before Justice Helfand for sentencing on November 1, 1963. Smalls was to be sentenced first, and his attorney asked to speak "in connection with the case itself." Justice Helfand denied this request, noting that his knowledge of the case was complete by virtue of his having conferred with counsel and the district attorney prior to accepting the pleas to the reduced charge and having read the "full and complete" report of the Probation Department. See Sentencing Minutes (11/1/63), at 3–4. The State judge then launched into a fairly detailed account of the offense, relying, apparently, on facts supplied in large measure by Smalls and Cammack. See *id.* at 4–6. Neither Smalls nor his attorney expressed any disagreement with Justice Helfand's account.

After sentencing Smalls to a 10-to-20-year term of imprisonment, the court turned its attention to petitioner. After certain preliminary matters had been resolved, petitioner was advised of his right to address the court, and indicated a desire to have his lawyers speak on his behalf. See *id.* at 7. Mr. Ashmead, who spoke first, observed that the court had before it "a full probation report, complete in all respects," and asked "the court to give what leniency is possible in view of all the circumstances." *Id.* Co-counsel, Arthur Kamell, then addressed the court. Mr. Kamell, who pointed out that he had been present during Smalls' sentencing, emphasized that Cammack did not have a felony record and sought to impress upon the court "one or two factors which may not appear in the [probation] report": Cammack's high intelligence, evi-

denced by a college scholarship, and his great prospects for "rehabilitation." See *id.* at 8.

Plainly, Justice Helfand was not moved by the argument of counsel. He noted that Cammack had "been in and out of the courts all over" and stressed the seriousness of his role in the killing for which he was about to be sentenced. Kamell conceded that petitioner's part in the unfortunate incident was not in dispute, but again urged the court to consider "the possibility of rehabilitation in this case—." *Id.* at 8–9. Bringing the colloquy to an end, Justice Helfand offered a brief comment on petitioner's culpability and the leniency of the plea arrangement, and imposed a sentence of 10 to 20 years imprisonment. The record contains no indication that petitioner or his attorneys were precluded from apprising the court of any other matter pertinent to sentencing. No appeal was at that time taken from the judgment of conviction and sentence.

In 1970, after making several unsuccessful applications for a writ of error *coram nobis,*[2] petitioner and Smalls, pursuant to a procedure approved by the New York Court of Appeals in *People v. Montgomery,* 24 N.Y.2d 130, 299 N.Y.S.2d 156, 247 N.E.2d 130 (1969), moved before Justice Helfand for resentencing, in order to reinstate their time to appeal their convictions.[3] Although Justice Helfand had afforded petitioner and his codefendant a number of adjournments in order to permit them to retain counsel, on August 31, 1970, he granted their motion, over their objection that they were still unrepresented, and sentenced both *nunc pro tunc* to the same term as had been

---

**2.** One of the grounds urged by petitioner in his earlier motions was the contention that his guilty plea had been the product of an unlawfully obtained confession. Justice Helfand apparently found the claim without merit, and the Appellate Division affirmed by orders dated May 9, 1966, and May 6, 1968. Cammack has not raised this claim in the instant petition.

**3.** The *Montgomery* procedure was developed in order to restore the defendant's constitutional and statutory right to appeal his conviction where his failure timely to appeal occurred because neither counsel nor the court informed

him of his right to appeal. 24 N.Y.2d at 132, 299 N.Y.S.2d at 159, 247 N.E.2d at 132. The procedure is not limited to those defendants who have been convicted following a trial. *People v. Lynn,* 28 N.Y.2d 196, 202 n. 2, 321 N.Y.S.2d 74, at 81, 269 N.E.2d 794, at 796. A defendant who has been convicted on a plea of guilty must, however, establish "that at the time he had a genuine appealable issue which he might have raised had he been advised of his right to appeal." *Id.* at 204–05, 321 N.Y.S.2d at 81, 269 N.E.2d at 799.

originally imposed in 1963. The record of the resentencing proceeding indicates that Cammack and Smalls attempted to address the court prior to the pronouncement of resentence, that Justice Helfand warned them "to keep quiet," and that when they persisted in their efforts to be heard, both were handcuffed to their chairs and gagged. See Resentencing Minutes (8/31/70), at 3–4. The judgments of conviction on resentence were thereafter affirmed by the Appellate Division, Second Department, and the New York Court of Appeals, in both instances without opinion. See *People v. Cammack*, 37 A.D.2d 918, 326 N.Y.S.2d 987 (2d Dep't); *People v. Smalls*, 37 A.D.2d 919, 326 N.Y.S.2d 987 (2d Dep't), *aff'd without opinion*, 30 N.Y.2d 801, 334 N.Y.S.2d 901, 286 N.E.2d 276 (1972).

Cammack raises three grounds in support of his petition for habeas relief. First, he urges that the *Montgomery* resentencing was conducted in disregard of his right to be represented by counsel. Second, he claims that his guilty plea was accepted by the State court in a manner inconsistent with the requirements set forth in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Rule 11, F.R. Crim.P. Third, petitioner contends that the procedure followed at his sentencing in 1963 was constitutionally infirm because he was denied the opportunity to present mitigating circumstances to the court and because counsel was not permitted to make any statement concerning the case or to speak fully. It appears that each of these grounds was raised by petitioner in the New York courts on direct appeal from the judgment on resentence, and respondent concedes that available State remedies have been exhausted.

## DISCUSSION

■ The constitutional right to counsel applies "at every stage of a criminal proceeding where substantial rights of a crimi-nal accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967). Indeed, the Supreme Court has only recently reaffirmed the *Mempa* holding that "sentencing is a critical stage of the criminal proceeding at which [the defendant] is entitled to the effective assistance of counsel." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977). Moreover, *Mempa* has been given retroactive effect. See *McConnell v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968).

As noted above, petitioner's first ground for relief is an asserted denial of his right to counsel at his 1970 *Montgomery* resentencing. Since it is conceded that petitioner was resentenced without the assistance of an attorney despite his repeated objections to going forward, his claim turns entirely on whether the *Montgomery* proceeding was a critical stage in the criminal process—that is, one "where substantial rights of a criminal accused may be affected." *Mempa v. Rhay*, *supra*, 389 U.S. at 134, 88 S.Ct. at 257.

■ The contours of the *Montgomery* resentencing procedure have been fully explored by the New York courts, and it is plain that the procedure is in substance simply one for reviving a criminal defendant's time to seek direct review of his conviction.[4] See, *e. g., People v. Corso*, 40 N.Y.2d 578, 580, 388 N.Y.S.2d 886, 889, 357 N.E.2d 357, 359 (1976); *People v. Melton*, 35 N.Y.2d 327, 329, 361 N.Y.S.2d 877, 880, 320 N.E.2d 622 (1974). Thus, it is neither a mechanism whereby the merits of the conviction may be relitigated in the trial court, see *People v. Martinez*, 65 Misc.2d 450, 318 N.Y.S.2d 397 (S.Ct.N.Y.Co.1971), nor a stage at which a defendant may withdraw a guilty plea on the ground that it was coerced, see *People v. Bennett*, 35 A.D.2d 1000, 318 N.Y.S.2d 111 (2d Dep't 1970). Moreover, in providing *Montgomery* relief, the *nisi prius* court is without legal power

---

4. New York has since replaced the *Montgomery* procedure with a statutory remedy. N.Y. CPL § 460.30 provides for a motion to an intermediate appellate court for an extension of time for taking an appeal. See *People v. Corso*, 40 N.Y.2d 578, 580, 388 N.Y.S.2d 886, 889, 357 N.E.2d 357, 359 (1976).

to modify the original sentence. See *People v. Grebbin,* 29 N.Y.2d 495, 323 N.Y.S.2d 970, 272 N.E.2d 481 (1971) (no opinion). The trial court is limited to reinstating the defendant's time to appeal upon a requisite showing; whatever claims a defendant may have concerning the merits of his conviction must thereafter be pursued in the State's appellate courts.

■ Here, petitioner's 1970 resentencing must be viewed as no more than a device for reinstating his time to appeal his 1963 conviction and sentence. See *United States ex rel. Cooper v. Zelker,* 339 F.Supp. 410 (S.D.N.Y.1972); *People v. La Vallee,* 37 A.D.2d 661, 662, 323 N.Y.S.2d 18, 19 (3d Dep't 1971). In view of the *pro forma* character of the *Montgomery* proceeding, the court is of opinion that it was not a critical stage at which the assistance of counsel was constitutionally required. Moreover, it appears that petitioner was afforded all the relief to which he was entitled and which the court was empowered to grant. Indeed, other than his desire to be represented by counsel, petitioner does not indicate what matters, if any, he wished to call to the attention of Justice Helfand. In sum, although the judge's conduct, under the circumstances, may have been open to criticism, it cannot be said that petitioner was deprived of any constitutional right.

■ Petitioner's second ground for relief is that his conviction was based on a plea of guilty taken in a manner that did not comport with the requirements of *Boykin v. Alabama, supra,* or the provisions of Rule 11, F.R.Crim.P. The court is of opinion that the contention is without merit because the standards announced in *Boykin* are inapplicable to pleas taken prior to 1969,

Rule 11 does not apply to State prosecutions, and the record reveals that the plea was taken in accordance with pre-*Boykin* requirements.

The Supreme Court in *Boykin* held that when a defendant in a State criminal proceeding pleads guilty, the record must affirmatively show an intelligent and voluntary waiver of constitutional rights.[5] 395 U.S. at 242, 89 S.Ct. 1709. At the federal level, Rule 11, F.R.Crim.P., provides procedures to assist the court "in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). The *McCarthy* Court went on to hold that noncompliance with Rule 11 requires that the defendant be given an opportunity to plead anew. *Id.* at 468, 89 S.Ct. 1166. However, the Supreme Court subsequently ruled that *McCarthy* would not be applied retroactively.[6] *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). In *Halliday,* the Court reasoned that although a strict compliance with Rule 11 would enhance the reliability of the voluntariness determination, the defendant protesting noncompliance with the rule was not without other post-conviction remedies to attack the voluntariness of his plea, *id.* at 832–33, a factor to be considered in determining retroactive application of the constitutional doctrine. See *Johnson v. New Jersey,* 384 U.S. 719, 729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■■ In assessing petitioner's claim, the question arises whether the standards articulated in *Boykin* apply retroactively. The court adheres to the rule that *Boykin,* like *McCarthy,* does not apply retroactively. *E. g., Hendron v. Cowan,* 532 F.2d 1081, 1083

---

5. The *Boykin* Court identified three constitutional rights which are waived by a plea of guilty: the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. See 395 U.S. at 243, 89 S.Ct. 1709 (citations omitted).

6. The *Halliday* decision disposes of petitioner's claim that Rule 11 was not complied with when his plea was taken. It should be noted that Rule 11 is a federal rule, not applicable in State

court proceedings. See, *e. g., Roddy v. Black,* 516 F.2d 1380, 1383 (6 Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975); *McChesney v. Henderson,* 482 F.2d 1101, 1106 (5 Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974); *Beavers v. Anderson,* 474 F.2d 1114, 1117 (10 Cir. 1973); *United States ex rel. Curtis v. Zelker, infra,* 466 F.2d at 1102.

(6 Cir. 1976); *United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1102 (2 Cir. 1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973); *Freeman v. Page,* 443 F.2d 493, 496 (10 Cir.), *cert. denied,* 404 U.S. 1001, 92 S.Ct. 569, 30 L.Ed.2d 554 (1971); *Meller v. State of Missouri,* 431 F.2d 120, 124 (8 Cir. 1970), *cert. denied,* 400 U.S. 996, 91 S.Ct. 469, 27 L.Ed.2d 445 (1971); *Moss v. Craven,* 427 F.2d 139, 140 (9 Cir. 1970). The rationale for applying *Boykin* only prospectively parallels the reasoning of the *Halliday* decision. To effectuate *Boykin's* purposes of facilitating the initial determination and providing a record for later review of the voluntary nature of the plea, retroactive application is not appropriate. *United States ex rel. Rogers v. Adams,* 435 F.2d 1372, 1374 (2 Cir. 1970), *cert. denied,* 404 U.S. 834, 92 S.Ct. 115, 30 L.Ed.2d 64 (1971). In addition, even if his plea was taken prior to *Boykin* and without adhering the *Boykin's* standards, a defendant is not precluded from challenging the voluntary nature of the plea in federal court. *Id.* at 1375. See generally Bishop, *Federal Habeas Corpus in State Guilty Pleas,* 71 F.R.D. 235, 254–59 (1977).

■ Applying the pre-*Boykin* test of voluntariness here, an examination of all the "relevant circumstances" leads to the conclusion that petitioner's plea was voluntary. See *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Waley v. Johnston,* 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); *United States ex rel. Rogers v. Adams, supra,* 435 F.2d at 1373–74; *United States ex rel. Cooper v. Zelker, supra,* 339 F.Supp. at 413. The record reflects that prior to offering the plea, petitioner had conferred with counsel, see Plea Minutes, *supra,* at 4, a factor to be given substantial weight in determining the voluntary nature of the plea. *Cf. McMann v. Richardson,* 397 U.S. 759, 772, 90 S.Ct. 1441,

25 L.Ed.2d 763 (1970); *United States ex rel. Cooper v. Zelker, supra,* 339 F.Supp. at 413. The record further indicates that petitioner was not promised anything with respect to sentence nor was ·he otherwise induced or threatened into making the plea. *Id.* at 5–6. Finally, when asked whether he was acting voluntarily and of his own free will, petitioner responded in the affirmative. *Id.* at 6. Petitioner does not challenge his responses to Justice Helfand's inquiries, and it is clear that the record is not the "silent record" about which the *Boykin* Court expressed its disapproval. See 395 U.S. at 249, 89 S.Ct. 1709.

■ Petitioner's final ground for relief concerns his contention that his attorneys were not permitted fully to speak at the 1963 sentencing proceeding. He claims both a denial of his statutory right of allocution under former N.Y. CCP § 480, and a violation of his due process right to present relevant information to the court prior to sentencing. For the reasons which follow, the court concludes that the State-recognized right of allocution is not of constitutional dimension and that the sentencing court's curtailment of counsel's argument did not run afoul of the requirements of the due process clause.

Petitioner was sentenced in accordance with the provisions of former N.Y. CCP § 480, which required that prior to the pronouncement of judgment, a defendant be afforded an opportunity to show cause why judgment should not be pronounced.[7] Although the right of allocution provided by § 480 has been described as "an anachronistic remnant of the days when most crimes were punishable by death and the defendant did not have the right to counsel or the right to testify in his own behalf," Preiser, Practice Commentary to N.Y. CPL § 380.50 (citing *Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961)), the record in this case indicates that peti-

---

**7.** Under current practice, defendant as well as counsel must be afforded an opportunity to address the court prior to the imposition of sentence. See N.Y. CPL § 380.50. This statutory allocution is patterned after Rule 32(a)(1),

F.R.Crim.P. For the matters that can be raised as to legal cause for not pronouncing judgment, and the procedure for raising these matters, see N.Y. CPL § 330.30, *et seq.*

tioner was in fact afforded an opportunity to address the court personally or through counsel, see Sentencing Minutes (11/1/63), at 7. In any event, no basis for habeas relief arises unless there has been an affirmative denial of the opportunity to speak or there are other aggravating circumstances. See *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *United States ex rel. Sabella v. Follette,* 432 F.2d 572, 576 (2 Cir. 1970), *cert. denied,* 401 U.S. 920, 91 S.Ct. 905, 27 L.Ed.2d 822 (1971); *United States ex rel. Resseguie v. Follette,* 297 F.Supp. 1103, 1105 (S.D.N.Y.), *cert. denied,* 396 U.S. 971, 90 S.Ct. 459, 24 L.Ed.2d 439 (1969), *rehearing denied,* 396 U.S. 1031, 90 S.Ct. 584, 24 L.Ed.2d 529 (1970). The record is clear not only that petitioner was afforded an opportunity to address the court, but that his attorneys, to whom he had referred, made use of that opportunity. See Sentencing Minutes (11/1/63), at 7–9.

Petitioner further urges that the sentencing court committed constitutional error by limiting counsel's opportunity to present information relevant to sentencing. It is settled that "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." *Gardner v. Florida, supra,* 97 S.Ct. at 1205. In the Second Circuit this has been construed to mean that "material false assumptions as to *any facts* relevant to sentencing" —not merely misconceptions about the defendant's prior criminal record—will render "the entire sentencing procedure invalid as a violation of due process." *United States v. Malcolm,* 432 F.2d 809, 816 (2 Cir. 1971). See *United States v. Robin,* 545 F.2d 775 (2 Cir. 1976); *United States v. Stein,* 544 F.2d 96 (2 Cir. 1976).

Petitioner, however, does not now suggest that the sentencing judge was misinformed as to any facts relevant to sentencing, nor did his attorneys at the time of sentencing. On the contrary, neither attorney expressed any disagreement with Justice Helfand's portrayal of the facts of the case, and, as noted above, one attorney went so far as to characterize the probation report as "complete in all respects." Sentencing Minutes (11/1/63), at 7. In addition, neither petitioner nor his attorneys intimated prior to the close of the sentencing proceeding that the court was not fully apprised of all relevant information. Finally, petitioner does not indicate what matters counsel would have raised had additional time been allotted. See *Hill v. United States, supra,* 368 U.S. at 429, 82 S.Ct. 468.

Due process, of course, is a flexible concept "and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Here, petitioner, through counsel, was permitted to address the court and does not allege any misapprehension on the part of the sentencing judge nor indicate that any relevant matter was not raised. In such circumstances petitioner's claim that he was sentenced in a manner inconsistent with the dictates of the due process clause cannot be sustained. The petition for a writ of *habeas corpus* is therefore denied.

SO ORDERED.

The Clerk of the Court is directed to enter judgment in favor of respondent dismissing the petition.